Joseph Spears et al., Respondents, *v.* The Mayor, Aldermen and Commonalty of the City of New York et al., Appellants.

T. held a lease of certain real estate on Broadway, New York, which was taken for the widening of that street, under the act of 1869 (Chap. 890, Laws of 1869), providing for the alteration of the map or plan of said city. An award was made by commissioners of estimate and assessment of $40,200 for the damages sustained by T. which was confirmed, and he thereafter assigned $12,262 of the award to D., who assigned the same to plaintiff. Subsequently T. assigned to defendant M., who had knowledge of the prior assignment to D., $12,350 out of the award, and to secure said sum executed to M. a mortgage upon his leasehold interest, which mortgage was duly recorded. Afterward, under the act of 1871 (chap. 57, Laws of 1871), the award to T. was vacated and new commissioners appointed, who made an award of $11,544, which award was confirmed. In their report the commissioners found that T. was the owner of the leasehold premises, which, together with their award, was subject to the mortgage to M. In an action to restrain defendant, the city corporation, from paying the award to M. and to establish plaintiffs' claim thereto, *held*, that as the act of 1869, by its own terms, condemned the land in question and the right to compensation was absolute, the first award represented T.'s claim for damages, and by the assignment to D. he in legal effect assigned a portion of his damages; that T.'s right to damages was not destroyed or impaired by the vacation of the award, and when the second award was made it again represented the damages, to which the assignment to D. attached; and that, therefore, said assignment being prior in point of time was entitled to a preference over the assignment to M.

Also *held*, that plaintiff was entitled to equitable relief.

After this action was commenced M. sued the city to recover as mortgagee the amount of the last award. The city made default, judgment for the full amount was entered against it, which it paid. Defendants claimed that by virtue of said act of 1869, and of various provisions of statutes relating to the opening of streets and paying awards (§§ 178, 183, 184, chap. 86, Laws of 1813; § 3, chap. 209, Laws of 1839), plaintiffs could not maintain their action. *Held* untenable; that under those provisions, the ascertainment of the persons entitled to the damages was merely incidental, and the report of the commissioners was not conclusive in regard thereto; and that the payment by the city after notice and suit brought was at its peril.

A personal judgment against M. was rendered with directions that in case of failure to collect, then it should be enforced against the city. *Held* proper; that the court having obtained jurisdiction over the parties and

subject-matter, and a cause of action in equity existing at the time of the commencement of the action having been established, and as the nature of the controversy was not essentially changed by the payment to M., the power of the court to grant complete relief was not defeated by said subsequent acts of the defendants; that M. could not complain of the judgment, as under the act of 1813 he was liable to plaintiffs, and the city could not complain, as it might have been held liable absolutely for the whole amount.

(Argued December 12, 1881; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made June 11, 1880, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term. The nature of the action and the material facts are set forth in the opinion.

*D. J. Dean* for Mayor, etc., appellant. It was the duty of the commissioners of estimate and assessment to make the award as it was made, viz., to Thompson as owner, subject to the right of Mathews to be first paid therefrom the debt secured by the mortgage to him. (Laws of 1813, chap. 86, § 178; Valentine's Laws, p. 1194; Laws of 1839, chap. 209, § 3; Valentine's Laws, p. 1223; *Matter of John Street*, 19 Wend. 659; *Wiggin* v. *Mayor*, 9 Paige, 19.) The plaintiffs had acquired no interest in the land, and were not entitled to be mentioned in the report as persons entitled to or interested therein. (*Page* v. *Waring*, 76 N. Y. 463–469; *Hunt* v. *Rousmaniere*, 1 Peters, 1; *Lanning* v. *Carpenter*, 48 N. Y. 413; *Ashley* v. *Dixon*, id. 430; Laws of 1818, p. 196; *Strang* v. *Rubber Company*, 1 Sweeney, 78; *Garrison* v. *Mayor*, 21 Wall. 196–205; *Detwold* v. *Drake*, 46 N. Y. 318.) The award having been properly made to Mathews, it was the duty of the city to pay it to him. (Laws of 1813, chap. 86, §§ 178, 183, 184; Valentine's Laws, p. 1198.) The confirmation of the report is a judgment, which cannot be reviewed or impeached in a collateral action. (*People* v. *Betts*, 55 N. Y. 600, 603; *Dolan* v. *The Mayor*, 62 id. 472; *Astor* v. *The Mayor*, id.

580; *Matter of Kiernan*, id. 457; *Betts* v. *Bagley*, 12 Pick. 580; *Barhyte* v. *Shepherd*, 35 N. Y. 238; *People* v. *Rochester*, 21 Barb. 656, 670.) The city must pay money awarded as damages to the person to whom the award has been made, and no liability to any other person rests upon it. (*Hatch* v. *Mayor*, 82 N. Y. 436; *People* v. *Fowler*, 55 id. 675; *People* v. *Betts*, id. 602; *In re Dept. of Public Parks*, 63 id. 565; *Matter of Commissioners Central Park*, 50 id. 493; *In re Arnold*, 60 id. 26; *Dolan* v. *Mayor*, 62 id. 472; *Pittman* v. *Mayor*, id. 637; Code, § 122, ed. 1870.) If, by error, mistake, or other reason, the award is made to a person not entitled thereto, the statute gives the claimant a right of action against that person, for any money which he may receive under the award. (*Patrick* v. *Metcalf*, 37 N. Y. 332; *Butterworth* v. *Gould*, 41 id. 450; *Dicker* v. *Saltzman*, 60 id. 275; Sedgwick on Statutory and Const. Law [2d. ed.], p. 343; *Dudley* v. *Mayhew*, 3 Comst. 9; *Almy* v. *Harris*, 5 Johns. 175; *Stafford* v. *Ingersoll*, 3 Hill, 39; *Russell* v. *Mayor*, 2 Denio, 461; *Hatch* v. *The Mayor, etc.*, 82 N. Y. 436; Laws of 1852, chap. 52, §§ 3, 4, pp. 46, 47; *Astor* v. *Hoyt*, 5 Wend. 604, 605; *Coutant* v. *Catlin*, 2 Sandf. Ch. 485; *Central Park Case*, 16 Abb. 56.) It is the province, duty, and power of the courts, when they have acquired jurisdiction, and have the whole merits before them, to proceed and do complete justice between the parties. (*Bidwell* v. *Astor Ins. Co.*, 16 N. Y. 263–267; *Lamb* v. *Buckmiller*, 17 id. 626; *Phillips* v. *Gorham*, id. 270; *N. Y. Ice Co.* v. *N. M. Ins. Co.*, 23 id. 357; *Lattin* v. *McCarty*, 41 id. 107.) Where a cause is tried before a judge without a jury, and after the trial is entered upon, defendant moves to dismiss the complaint, on the ground that the case should have been tried by a jury, he waives a right to jury trial by entering upon trial by the court. (*Greason* v. *Keteltas*, 17 N. Y. 491; *Moffat* v. *Moffat*, 10 Bosw. 468; *McKeon* v. *See*, 4 Robinson, 449.)

*Thomas Allison* for John Mathews, appellant. The assignments by Thompson to Davis, and by Davis to plaintiffs of

$12,262, out of the award of $40,200 made by the commissioners of the first Broadway widening proceeding, gave no title to the $11,544 awarded by the commissioners in the second Broadway widening proceeding. (*Page* v. *Waring*, 76 N. Y. 463, 469; *Merritt* v. *Bartholick*, 36 id. 44–46; *Stoddard* v. *Hart*, 23 id. 556, 561, 562, 563; *Garrison* v. *The Mayor*, 21 Wall. [U. S.] 196.) The plaintiffs could base no right of action upon the fact that the plaintiffs and Davis erroneously supposed and believed that the assignments carried any thing else than what was specified in them. (*Lanning* v. *Carpenter*, 48 N. Y. 408; *Merritt* v. *Bartholick*, 36 id. 44, 46; *Stoddard* v. *Hart*, 23 id. 556, 561, 562, 563; *Garrison* v. *The Mayor*, 21 Wall. [U. S.] 196; *Matter of Broadway Widening*, 61 Barb. 483; 49 N. Y. 150; *Strang* v. *N. Y. Rubber Co.*, 1 Sweeney, 78; *Detmold* v. *Drake*, 46 N. Y. 318; *Matter of Wash. P'k* v. *Barnes*, 2 N. Y. S. C. [T. & C.] 637; *Matter of A. & S. R. R. Co.* v. *McCloskey*, id. 637, note; *Matter of Com'rs of Wash. P'k*, 56 N. Y. 144; *Matter of Military Parade Ground*, 4 N. Y. S. C. [T. & C.] 671; *Matter of Application of Dept. of Pub. P'ks*, 60 N. Y. 319.) As the first confirmation, and the awards made by it, could be set aside, and were set aside, Thompson and Davis had no right against the city by virtue of the first award alone. (*Matter of Broadway Widening*, 61 Barb. 483; 49 N. Y. 150.) Where private property is taken for public use, there must be given to the owner of the property a remedy concurrent with the taking, whereby payment can within a reasonable time be enforced through the courts against an adequate fund, and that this remedy cannot be left dependent upon the future action of the legislature or any other contingency. (*Bloodgood* v. *The Mohawk & H. R. R. Co.*, 18 Wend. 9, 18; *Strang* v. *N. Y. Rubber Co.*, 1 Sweeney, 78; Laws of 1839, chap. 209; *In re Com'rs of Wash. P'k*, 56 N. Y. 144; *In re Wash. P'k*, v. *Barnes*, 2 N. Y. S. C. [T. & C.] 637; *Matter of Military Parade Ground*, 4 id. 671; *Matter of Application of Dept. of Pub. P'ks*, 60 N. Y. 319.) The claim that from and after the filing of the map the lands were condemned, is untenable. (*Matter of*

*Wash. P'k,* 56 N. Y. 144; *Matter of Parade Ground,* 60 id. 319; *Matter of Wash. P'k,* 2 N. Y. S. C. [T. & C.] 637; *Matter of Parade Ground,* 4 id. 671.) If Thompson had a good title to his lease, and had not surrendered it, then Matthews' mortgage was a valid lien. (*Ashley* v. *Dixon,* 48 N. Y. 430.) The plaintiffs are in no event entitled to the whole of the $11,544 in preference to the Matthews' mortgage. (*Wright* v. *Wright,* 70 N. Y. 98.) This action in equity cannot be sustained. (*Patrick* v. *Metcalf,* 37 N. Y. 332; *Butterworth* v. *Gould,* 41 id. 450; *Decker* v. *Saltzman,* 60 id. 275; *Peckham* v. *Van Wagener,* 83 id. 40, 44, 45; *Jessup* v. *Carnegie,* 80 id. 456; *Dudley* v. *Mayhew,* 3 Comst. 9; Sedgwick on Construction of Statutory and Constitutional Law [2d ed. Pomeroy's Notes], 343; *McKeon* v. *Coherty,* 3 Wend. 494; *People, etc.,* v. *Betts,* 55 N. Y. 600, 603; *People* v. *Fowler,* id. 675; *Dolan* v. *Mayor,* 62 id. 474; *Astor* v. *Mayor,* id. 588; *In Matter of Department of Parks,* 73 id. 560; *Livingston* v. *Sulzer,* 19 id. 375, 383.) It was error to receive evidence of the payment by the city to Matthews, and to try or determine any issues arising thereon. (*Wright* v. *Delafield,* 25 N. Y. 266; *Paige* v. *Willett,* 38 id. 28; *Peckham* v. *Van Wagenen,* 83 id. 40, 44, 45; *Patrick* v. *Metcalf,* 37 id. 332; *Butterworth* v. *Gould,* 41 id. 450; *Decker* v. *Salzman,* 59 id. 275; *Dudley* v. *Mayhew,* 3 Comst. 9; *McKeon* v. *Coherty,* 3 Wend. 494; *People* v. *Greene,* 1 Hun, 14; Sedg. on Const. of Stat. and Const. Law [2d ed., Pomeroy's Notes], 343; *Graham* v. *Read,* 57 N. Y. 681; *Neudecker* v. *Kohlberg et al.,* 81 id. 296, 301; *Wilner* v. *Ocumpaugh,* 71 id. 113, 117; *Muller* v. *Earle,* 5 J. & S. 388; Old Code, § 274; New Code, § 521; *Fink* v. *Allen,* 4 J. & S. 350, 359; *Kay* v. *Whittaker,* 44 N. Y. 565, 576; *Swift* v. *City of Poughkeepsie,* 37 id. 511, 514; *Woods* v. *Pangburn,* 75 id. 495, 501.) The doctrine of *res adjudicata,* and voluntary payments apply to the city as they do to other parties. (*Brown* v. *The Mayor,* 66 N. Y. 385, 390; *Pittman* v. *Mayor,* 3 Hun, 370, 374; *Mayor* v. *Cornell,* 9 id. 215, 217; *People* v. *Stevens,* 71 N. Y. 527, 549, 550; *Dolan* v. *Mayor,* 62 id. 472; *In re Arnold,* 60 id. 26; *Astor* v.

*Mayor*, 62 id. 580, 588; *Swift* v. *City of Poughkeepsie*, 37 id. 511, 514.)

*Amasa J. Parker and G. N. Seixas* for respondents. The plaintiffs had a remedy in equity. (*Coutant* v. *Catlin*, 2 Sandf. Ch. 485; *Matter of Central Park*, 16 Abb. 64; *Astor* v. *Miller*, 2 Paige, 68; *Astor* v. *Hoyt*, 5 Wend. 602.) At the time of the assignment to Davis, the leasehold was converted into the award. (*Detmold* v. *Drake*, 46 N. Y. 318; 1 Story's Eq. Jur., §§ 790, 791; 2 id., §§ 1212, 1040; Bigelow on Estoppel, 473; *Dezell* v. *Odell*, 3 Hill, 215; *Bennett* v. *Van Syckel*, 4 Duer, 462; 2 Story's Eq. Jur., §§ 1258, 1259, p. 629.) By equitable substitution or subrogation, the assignment to Davis will attach to the second award. (*Mathews* v. *Aikin*, 1 N. Y. 595; *Couch* v. *Delaplain*, 2 id. 400; 2 Story's Eq. Jur., §§ 1232, 1259; *Leach* v. *Leach*, 10 Ves. 511; *Ex parte Morgan*, 12 id. 6; *Dexter* v. *Stewart*, 7 Johns. Ch. 52; *Brown* v. *Jones*, 46 Barb. 400; *Ryan* v. *Dox*, 34 N. Y. 307; *Astor* v. *Miller*, 2 Paige's Ch. 76; *Field* v. *The Mayor*, 6 N. Y. 179; *Jackson* v. *Stevens*, 13 Johns. 316; *Jackson* v. *Hubbell*, 1 Cow. 613.) If a person grant with warranty, premises in which he has no interest, and afterwards obtains title, it becomes vested in the grantee, his heirs or assigns, by estoppel. (*B'k of Utica* v. *Mersereau*, 3 Barb. Ch. 528; *Kellogg* v. *Wood*, 4 Paige, 578; *Vanderheyden* v. *Crandall*, 2 Denio, 9; aff'd, 1 N. Y. 491; *Mc Williams* v. *Nisby*, 2 S. & R. 507; *Wilson's Estate*, 2 Barr. 325; 3 Leading Cases in Eq. [3d Am. ed.] p. 343.) Section 178 of chapter 86, Laws of 1813 (2d Rev. Laws of 1813, pp. 413, 419) which makes the report "final and conclusive," is designed only to vest the title in the city and not to take away from the parties interested in the lands their rights as against the city and among themselves. (*People* v. *Betts*, 55 N. Y. 600.)

EARL, J. In 1870, Ezekiel R. Thompson held a lease of certain real estate situate upon Broadway, New York, and such real

estate was taken for the widening of Broadway under the act (Chap. 890 of the Laws of 1869) entitled "An act to alter the map or plan of the city of New York, and to carry the alteration into effect." Commissioners of estimate and assessment, appointed under that act, awarded to him for the damages sustained by him in consequence of the taking of his leasehold estate, the sum of $40,200 ; and their report was confirmed December 28, 1870. On the 31st day of December, 1870, Thompson, by an instrument in writing under his hand and seal, assigned to Abram V. Davis the sum of $12,262 out of that award, and in the instrument he covenanted that a sum exceeding the $12,262 had been awarded to him by the commissioners, that the award had been confirmed by the Supreme Court, that it was made to him as lessee of the real estate mentioned, that there were no existing liens on the award, and that he had not done and would not do any act or thing to prevent the collection of the award to the amount assigned; and he authorized Davis to collect and receive the amount assigned to him from the city, and authorized and directed the comptroller or chamberlain of the city to pay him; and on the 28th day of January, 1871, by an instrument in writing executed by him under seal, Davis assigned to the plaintiffs all his interest in the award and under the assignment to him by Thompson; and such assignment is the foundation of the plaintiffs' claim in this action.

On the 11th day of January, 1871, Thompson, by an instrument in writing under his hand and seal, assigned to the defendant Matthews the sum of $12,350 out of the award, and, at the same time, and to secure the same sum, he executed and delivered to Matthews a mortgage upon his lease and leasehold premises, which mortgage was recorded in the office of the register of the city and county of New York on the 12th day of January, 1871. At the time of such assignment and mortgage to Matthews, he had notice of the prior assignment of Thompson to Davis, above mentioned. Afterward, in April, 1871, under the act (Chap. 57 of the Laws of 1871), the Supreme Court vacated and set aside the award to Thompson and referred the matter back to new commissioners appointed by it.

Such new commissioners made their report which was confirmed in July, 1872, in and by which an award of $11,544 was made for the damages in consequence of the taking of Thompson's leasehold premises, and in their report they found that Thompson was the owner of the leasehold premises subject to the above-mentioned mortgage to the defendant, Matthews, and that their award was subject to that mortgage.

The plaintiffs, claiming the sum last awarded by virtue of the assignment of Thompson to Davis and Davis to them, and having duly demanded payment of the award to them, in February, 1873, commenced this action. In their complaint they alleged the facts above set out, and also that Matthews was of doubtful pecuniary responsibility; that he claimed the award by virtue of Thompson's mortgage and assignment to him; that there was danger that the city would pay it to him, and the plaintiffs demanded relief — that the city be restrained from paying the award to Matthews, and that their lien upon the award be established as a prior lien to that of Matthews, and the city be ordered to pay the same to them, and that they have judgment against the city for the amount thereof, with interest.

The city appeared and answered, and admitted that it held the money for the last award, and that it was willing to pay to whichever of the claimants, Matthews or plaintiffs, appeared to be entitled thereto, and offered to pay the money into court. The defendant Matthews also appeared and answered, denying that he was of doubtful pecuniary responsibility; denying also that the plaintiffs were entitled to any interest in the last award by virtue of any assignment to them, and claiming that he had the prior right to the last award under his mortgage.

After this action was commenced, Matthews sued the city to recover the amount of the last award as mortgagee thereof. The city suffered default, and judgment for the full amount thereof, with interest, was entered against the city in June, 1875; and in 1876 the city paid the amount of that judgment to Matthews, with interest, and obtained a discharge and satisfaction thereof. Subsequently the city made a motion in this action for leave to serve a supplemental answer, setting up the

payment of that judgment to Matthews; which motion was denied. From the order denying the motion, the city appealed to the General Term, where the order was affirmed "upon the plaintiffs stipulating that the defendant, the Mayor, etc., shall be at liberty to show upon the trial of this action the fact of such payment by them to the defendant Matthews, not as a defense to the plaintiffs' action, but for the purpose of enabling the said defendant, the Mayor, etc., to insist that the judgment should be first enforced against Matthews, and then against the city, on plaintiffs' failure to collect from Matthews, and for the purpose of enabling the court or referee to make provision in the judgment, in substance, to the effect that execution shall first go against the defendant Matthews; and on failure to collect from him the sum recovered, the judgment may be enforced against the city." From the order of the General Term an appeal was taken to this court, and here the order was affirmed (72 N. Y. 442).

Afterward the action was brought to trial at a Special Term, and the court found the matters of fact hereinbefore stated, and also found that Matthews was wholly solvent, and gave judgment in favor of the plaintiffs against the defendants, providing in substance in the judgment that it should be enforced against the city only in case of failure to collect from Matthews, against whom execution was first to be issued. From that judgment the defendants appealed to the General Term; and from affirmance there, to this court.

The important question in this case is, who had the best claim to the award made for the leasehold premises, the plaintiffs or Matthews? And while we think plaintiffs' claim is not entirely free from doubt, and the answer to the question is involved in considerable difficulty, we have concluded that the solution made by the judgment below is the most equitable and just and is sustained by the best reasons.

The contention on the part of Matthews is, that the assignment from Thompson to Davis was simply an assignment of a portion of the first award, and that when that award was

vacated there remained nothing for the assignment to operate upon.

The act of 1869, by its own terms, condemned the land for widening Broadway. No proceedings were to be taken under the act for that purpose. The commissioners of Central Park were authorized, not to take and condemn the land, but simply to locate and establish the lines of Broadway as widened and established by the act, and when they had done these things, the land-owners were divested of their lands. The act was peremptory. It was not left to the discretion of the park commissioners, or of the city, whether the land should be taken and the improvement made as directed in the act. The land was, inevitably, to be taken and the improvement made, and the act simply provided how the improvement should be carried on, and how the damages for the land taken should be appraised and the expense of the improvement assessed and paid for. The land was, by the act, condemned for public use and the title thereof vested in the city, and compensation was to be made for it as provided in the act, and all that remained to the owners of the real estate was the right to compensation and probably the right to the possession of the land until the time of the actual opening of that part of Broadway to be widened, which time the commissioners of estimate and assessment were authorized, by the act of 1869, to designate. The right to such compensation was not contingent or dependent upon the will or action of the city, but was absolute, and the land-owners could compel it by *mandamus* in the mode prescribed in the act. Such right to compensation was, therefore, a mere chose in action with the general incidents and qualities of other choses in action.

The award with which the parties dealt when the assignment to Davis was made represented the value of Thompson's leasehold interest as it had been determined. It was the amount of his damages for his leasehold premises taken and appropriated for the improvement, and it represented his claim against the city for such damages. So long as the award remained in force the damages were merged in and represented by it.

Therefore, when Thompson assigned to Davis a portion of the award, he, in legal effect, assigned a portion of his damages.

It has been held that the assignment of a judgment operates as an assignment of the debt or cause of action for which it was recovered. (*Pulver* v. *Harris,* 52 N. Y. 73; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 id. 443; *Ballou* v. *Crosby,* 49 id. 183.) In the latter case ALLEN, J., said: "The assignment of the judgment carried with it the claim and debt upon which it was founded, and all claims against others as collateral and incidental to it. By whatever terms the assignment was made, the debt as the principal thing passed, and with it all rights and remedies for its recovery and collection." So the assignment of this award must be regarded as an assignment *pro tanto* of Thompson's damages for the taking of his land. His right to damages was not impaired or destroyed by the vacation of the first award. After that they were at large, and he had the right to have them again determined; and when the second award was made, that again represented his damages, and all his damages. That fixed the compensation which, under the Constitution and the laws, he was entitled to; and thereafter his assignment to Davis attached to that, not because by its terms it could be specifically applied to that award, but because the award represented and stood for the damages and compensation to which he was entitled. If these views are correct, it is quite clear that the assignment under which plaintiffs hold, being prior in time, is entitled to preference over the assignment to Matthews. According to these views the mortgage from Thompson to Matthews did not take effect upon the lease, and its only operation was to give him a claim upon the damages due to Thompson, subordinate to plaintiffs' claim.

The defendant Matthews contends, however, that for a portion of his claim he had a lien upon these damages older than that of the plaintiffs. Such a position was not taken in his answer and, so far as I can discover, was not taken upon the trial; and the court, at Special Term, was not requested to rule upon it. It is, therefore, too late to take it upon this ap-

peal before us. We will, however, add that we have carefully scrutinized the facts as they appear in the case, and we find nothing upon which this contention of Matthews can be founded. Probably, for the purpose of meeting the allegation in the complaint that Matthews' mortgage was without consideration, proof was given upon the trial that Thompson applied to Matthews in November, 1870, for a loan of $9,000, upon the security of the lease and leasehold premises, which loan Matthews agreed to make, but, by reason of some difficulty in getting the money, the loan could not be made until after the 1st of January, 1871 ; that in the meantime, to-wit: on the 5th day of December, 1870, John C. Shaw advanced to Thompson the sum of $5,000 upon the agreement that the same was to be treated as an advance on account of the mortgage subsequently to be given; that after the 1st day of January, Matthews, being unable to advance more than $6,000, Shaw agreed to make up the difference, and at the time of the execution and delivery of the mortgage to Matthews, to-wit: on the 11th day of January, 1871, Matthews drew his check to the order of Thompson for $6,000, which he inclosed to Shaw, and which Thompson indorsed to Shaw, who thereupon drew his check to Thompson's order for $3,000 ; thus making in all the sum of $8,000 in cash received by Thompson on the security of the mortgage; that the remaining $4,350 secured by the mortgage was made up as follows: Shaw had theretofore rendered certain services to Thompson which they adjusted at the sum of $1,000, and that, with Thompson's assent, was included in the mortgage. Thompson had also, theretofore, employed Shaw to represent his interest in the proceeding of widening Broadway, and to obtain an increase of his original award made by the commissioners in the proceeding, which was the sum of $33,500, upon an agreement to pay him fifty per cent of such increase; which agreement contained an assignment of such award to the extent of fifty per cent of such increase; and at the time the mortgage was made, the award had been increased to the sum of $40,200, making an increase of $6,700; and, with Thompson's as-

sent, the sum of $3,350, being fifty per cent of this increase, was included in the mortgage; and these items made up the whole sum secured by the mortgage. It is not claimed that the item of $1,000 for services theretofore rendered, included in the mortgage, was, prior to the date of the mortgage, in any way secured on the award or the leasehold premises. The item of $3,350, put into the mortgage as a compensation for an increase of the award, was completely wiped out when the award was vacated, and the first award was largely decreased by the one last made and confirmed. According to the contract between Thompson and Shaw, that sum does not appear to have been earned, and the consideration therefor wholly failed. The $6,000 advanced by Matthews, by his check to Thompson, repaid to Shaw the $5,000 which had been advanced by him and $1,000 of the $3,000 then advanced by Shaw; so that the mortgage then stood as a security for $8,000 advanced at its date: $2,000 by Shaw and $6,000 by Matthews. The facts are at least susceptible of this construction, and hence the claim is not well founded that Matthews had any lien upon, or assignment of, this award which was prior in time to the assignment under which plaintiffs claim.

But, notwithstanding the right of the plaintiffs to this award was the best, yet the defendants contend that the plaintiffs ought to have been defeated in this action, for reasons based upon certain provisions of the law yet to be noticed. The act, chapter 890 of the Laws of 1869, provided that all acts and parts of acts relative to opening, widening and laying out streets in the city of New York, except as otherwise provided in that act, should be applicable to the Broadway improvement, and thus certain provisions contained in the act, chapter 86, passed April 9, 1813, were made applicable; and in section 178 of that act it is provided, that the report of the commissioners of estimate and assessment when confirmed " shall be final and conclusive, as well upon the said mayor, aldermen and commonalty of the city of New York as upon the owners, lessees, persons and parties interested in and entitled to the lands, tenements, hereditaments and premises mentioned in the said report, and also

upon all other persons whomsoever." By section 3 of chapter 209 of the Laws of 1839, it is provided, that "it shall be the duty of the said commissioners, in all cases, to report fully and separately to the said court the amount of loss and damage and of benefit and advantage to each and every owner, lessee, party and person entitled unto or interested in any lands, tenements, etc., so required for the purpose of any such operation or improvement." It is provided in section 183 of the act of 1813, that within four calendar months after the confirmation of the report of the commissioners the city shall pay " to the respective persons and bodies corporate mentioned or referred to in said report, in whose favor any sum or sums of money shall be estimated and reported by said commissioners, the respective sum or sums so estimated or reported in their favor respectively," and that in case of the failure of the city so to pay " the respective person or persons, party or parties in whose favor the same (the awards) shall be reported, or his, her or their executors, administrators or successors, at any time or times after application first made, etc., may sue for and recover the same with interest from and after the said application therefor, and the costs of suit in any proper form of action against the said mayor, etc., in any court having cognizance thereof, in which it shall be sufficient to declare generally for so much money due to the plaintiff or plaintiffs therein, by virtue of this act, for premises taken for its purposes hereinbefore mentioned, and it shall be lawful for the plaintiff or plaintiffs to give any special matter in evidence under such general declarations, and this act and the report of said commissioners with proof of the right and title of the plaintiff or plaintiffs to the sum or sums demanded shall be conclusive evidence in such action." And it is provided in section 184 of the same act, that "where any sum or sums, or compensation so to be reported by the said commissioners in favor of any person or persons, whether named or not named in said report, shall be paid to any person or persons, party or parties whomsoever, when the same shall of right belong, and ought to have been paid, to some other person or persons, it shall be lawful for the person or persons

to whom the same ought to have peen paid to sue for and re-cover the same, as so much money had and received to his, her or their use by the person or persons respectively to whom the same shall have been so paid."

Under these provisions of law, the contention on the part of the appellants is that the report of the commissioners was so far conclusive as to the person entitled to the award that the city was obliged to pay the same to Matthews, and that the only remedy of the plaintiffs was to recover the amount thereof of Matthews, after payment to him. Our attention has been called to no decision giving such a construction to these pro-visions of law. The main purpose of the appointment of com-missioners was to have the damages in consequence of lands taken for street improvements appraised, and the amount thereof assessed as directed by law; and for that purpose their report, when confirmed, unless vacated or set aside by some di-rect proceeding, was declared final and conclusive. The ascer-tainment of the names of the persons whose lands were taken or to whom damages were to be paid was merely incidental to the main purpose, and was for the subsequent guidance of the city authorities and the protection of the city. The very terms in which the provisions of the law are expressed show that the report was not to be conclusive as to the persons entitled to the damages awarded, because it is provided in section 184 that even after payment to the person named in the award, the rightful claimant of the damages may recover them of the person thus paid; and in section 183 it is provided that before the person named in the award can recover the amount thereof of the city, he must prove not only the report of the commissioners, but his right and title to receive the same; hence, as we construe that section, in the suit by Matthews against the city for this award, if the city had defended, he would have been obliged to prove his right and title to the award, and he could have been defeated by proof that these plaintiffs were entitled to receive payment thereof. It is undoubtedly true that the city would be justified to pay the person named in the award, unless it had received notice of an adverse claim. After such notice, and

certainly after suit commenced for the award by a person not named in the report as entitled thereto, the city would pay to the person named therein at its peril. This construction of the statutes can lead to no serious embarrassment of the city in paying such awards because, in the case of conflicting claims known to it, it can compel an interpleader and thus relieve itself from embarrassment or double responsibility. The construction contended for would operate unjustly upon persons situated like these plaintiffs. They could not sue the city, and they might not be able to compel the city to pay to the person named in the award, and they thus might be compelled to wait an indefinite time until the person named in the award should choose to compel payment to him, and after such payment the only security they would have for their damages would be the personal responsibility of such person.

Here the plaintiffs were, in fact, entitled to the award made. They had a double remedy : before payment by the city to Matthews, they could sue the city ; after payment to Matthews, they could sue him.

But here, so far as appears, there was no adjudication by the commissioners that Matthews was entitled to this award, even as between him and the city. They reported that the loss and damage of Thompson, in consequence of the leasehold premises taken, was the sum of $11,544, and made an award to him for that sum, and stated in their report simply that the award was subject to the mortgage of Thompson to Matthews. They did not determine that any part of the award was to be paid to Matthews, or that his mortgage was the only mortgage or claim thereon. They did not determine that the plaintiffs had no claim upon such award, prior or junior to that of Matthews, and it does not appear that they in any way passed upon or considered the claim of the plaintiffs. We can, therefore, perceive no reason for holding that the report of the commissioners was conclusive as to the persons entitled to this award. But if the commissioners had made an award distinctly to Matthews for his mortgage interest, then no other person could have claimed such award, and the city would have been absolutely bound to

pay him, upon principles laid down in *Matter of Department of Parks* (73 N. Y. 560). This was not such an award.

But it is further contended on the part of the appellants that the plaintiffs could not maintain this action in equity against all these defendants, and that their only remedy was an action at law against Matthews, after payment to him by the city. We are, however, of opinion that upon the facts as they existed at the commencement of this action, there were grounds for equitable relief. The plaintiffs were, of right, entitled to this award. Matthews also claimed it. The city claimed the right to pay it to him; and it and Matthews also claimed that the only right of the plaintiffs was to sue Matthews after payment to him. The plaintiffs had doubts of Matthews' pecuniary responsibility, and after payment to him, according to the contention of the defendants, the only remedy of the plaintiffs would be against him, with no security but his personal responsibility, whatever that might be when execution should be issued against him upon judgment recovered. It is true that he has been found solvent upon the trial of this action, but it would not be just to deprive the plaintiffs of the absolute responsibility of the city and turn them over to the mere personal security of Matthews. Under these embarrassing and peculiar circumstances, it was quite proper for the plaintiffs to commence this action, and have determined whether they or Matthews had the prior or superior claim to this award which could be treated as a fund in the possession of the city, and in the meantime to restrain the city from making payment to Matthews. This form of action has deprived neither the city nor Matthews of any substantial right. There were no conflicting questions of fact to be settled, and the case involved merely questions of law upon undisputed facts. Under such circumstances, under our present system of practice, even if the plaintiffs had mistaken their form of action, it would have been grossly unjust and improper to turn them out of court upon a mere question of form, in no way affecting any substantial right.

For the conclusion that this action can be maintained in equity, the cases of *Astor* v. *Miller* (2 Paige, 68), *Astor* v.

*Hoyt* (5 Wend. 602), and *Coutant* v. *Catlin* (2 Sandf. Ch. 485), furnish considerable authority.

It is further contended that even if this action were maintainable upon the facts as they existed at the time of its commencement, a personal judgment could not be rendered against Matthews for the amount of the award paid to him, for the reason that the pleadings contain no allegation authorizing such a judgment. It is true that at the time of the commencement of the action and service of the pleadings therein, the award had not been paid; but the court having obtained jurisdiction over the parties and the subject-matter, and a cause of action in equity having been proved to exist in favor of the plaintiffs at the time of the commencement of the action, the power of the court to grant complete relief could not be circumvented by transactions between the defendants subsequent to the commencement of the action. The nature of the controversy was not essentially changed by the payment. Before the payment, it was a controversy over a fund in the possession of the city. After the payment, it was a controversy over the same fund transferred to the possession of Matthews. The matter to be determined was, at all times, the right to the fund. It is a general rule in equity that the relief to be administered will be adapted to the exigencies of the case as they exist at the close of the trial. Matthews cannot complain of the judgment because the provision in the statute of 1813, above cited, made him liable to the plaintiffs. The city cannot complain of the judgment making it liable for any deficiency that cannot be collected of Matthews, because, but for the order of the General Term above referred to, it would have been liable for the whole sum. The right of the plaintiffs to the award being established, all the rest is mere matter of form affecting no substantial right, and should not avail to defeat the plaintiffs.

The foregoing discussion, it is believed, covers all the points made on the part of the appellants, and our conclusion is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.