O’Gorman, J.
This action, in its present form, is brought by plaintiff against the defendant, for the purpose of ascertaining which of them is legally entitled to an award of §326 made to unknown owners, in a proceeding for widening the Boston road in the Twenty-third ward of this city. The money is in the hands of the city chamberlain abiding the result of this action.
The case was tried before me without a jury by consent, and I shall state briefly the conclusions at which I have arrived and my reasons therefor.
The prehminary objection taken by the defendant to the jurisdiction of this court, is in my opinion, not well taken.
The deed from the defendant Morris to Hyde executed September 8, 1848, and recorded December 29, 1849, conveyed to Hyde the lot as described and numbered on the *114 map of the village of Morrisania made by 'Morris, and also the fee of the adjacent highway, called. “Spring Place.” up to the center, subject to an easement in the public as long as it continued to be used as a public highway. The grantor, Morris, was, at the time of the execution of this deed, owner of a large tract of land including said lot and said adjacent highway called “Spring Place.” The description in that deed is as follows : “ Southerly by the Post road leading from ÍSTew York to Boston, or Morse Avenue, as laid down on said map, one hundred and eighty-five feet; southwesterly by Spring place as laid down on said map, one hundred and seventy-five feet; northwesterly by lot number one hundred and thirty-nine on .said map, one hundred and eighty-five feet; northwesterly by lot number one hundred and thirty-seven on said map, ■one hundred and eighty-five feet, containing seventy-six hundredths of an acre -tVtr more or less.” The deed was a warranty deed with full covenants. There was nothing in the description of the lot, excluding or showing any intention to exclude the highway from the land conveyed, and under the controlling decisions in this state, the description in the deed did cover the adjacent highway to the center. The general principle of the law on the subject is this : An intent to exclude the highway will not be presumed, but must appear from the terms of the deed as illustrated by surrounding circumstances, where lands ■are granted, bounded on a highway. Unless by the terms of the grant, or by necessary implication, the highway is excluded, a title will pass to the centre of the highway (Mott v. Mott, 68 N. Y. 246; Kings Co. Ins. Co. v. Stephens, 87 Ib. 281).
It is not sufficient to exclude from the operation of the grant, the soil of the highway up to the center, that the grant is made with reference to a plan annexed, the measuring or coloring of winch would exclude it, or by lines and measurements which would only bring the premises to the exterior line of the highway, or that they are bounded by the line of the highway, or by any similar ex *115 pression (White’s Bank v. Nichols, 64 N. Y. 65 ; Story v. E. R. R. Co., 90 Ib. 180, et seq.).
In Bissell v. N. Y. C. & H. R. R. R. Co. (23 N. Y. 61), the court says : “ The idea of an intention in a grantor to withhold his interest in a highway to the middle of it, after parting with all his right in and title to the adjoining land, ought never to be presumed, and all courts hold that in such a case it requires some declaration of such intention in the deed, to sustain such an inference.”
Hyde, therefore, under his deed took to the center of Spring Place, and no seizin, right, interest, or reversion therein remained in the defendant, Morris.
The next question is, what are the rights of the plaintiff Pollock in this strip of land. On October 1,1849, Hyde conveyed to one Kubler, a part of the lot 138, as known and designated on said map, and the part conveyed him was described as follows : ‘Beginning at the southeasterly corner of said lot number 138, and runs thence northwesterly along Spring Place twenty-five feet; thence northeasterly on a line parallel with Morse avenue (the Boston Road) one hundred feet; thence southeasterly on a line parallel with Spring Place, twenty-five feet to Morse avenue, thence southwesterly along said Morse avenue one hundred feet to the southeasterly corner of the said lot at the place of beginning.” This was a warranty deed with full covenants, and was recorded on October 27, 1849. On May 5, 1883, Kubler conveyed the premises last named to one Meunel, describing them as being, the same as were conveyed by Hyde to Kubler, and as 1 f beginning at the southeasterly corner of said lot number 138 and running thence northwesterly along Spring Place twenty-five feet to Morse avenue ; thence southwesterly along said Morse avenue one hundred feet to the southwesterly corner of said lot at the place of beginning.”* This deed was also a warranty deed and was duly recorded on June 6, 1853. On February 21, 1857, said Meunel conveyed to the plaintiff the said part of lot numbered 138 on said map and following the same description as in the deed from Kubler to *116 Meunel. This deed was also a full warranty deed and was recorded on February 24, 1851.
In 1813, the department of public parks reduced by 40 feet the width of Spring Place, which had heretofore been 100 feet in width, excluding from it twenty feet on each side. Thus the public use of a strip twenty feet wide, and adjacent to the plaintiff’s lot became discontinued, and the question now is what interest has the plaintiff, as abutting owner, under the deed from Meunel to him, in that strip.
An attentive consideration of the Meunel conveyance and of the surrounding circumstances as tending to show the intention of the grantors, lead me to the opinion that the plaintiff, before the narrowing of Spring Place, and under his deed from Meunel, was the owner in fee, of the adjacent highway up to its centre, and on the narrowing of it, the strip over which the public use was discontinued, became vested in him in possession, free from the public easement. The description in the deed from Hyde to Kubler, from Kubler to Meunel, and from Meunel to the plaintiff are, no doubt, materially different from the description in the original deed from Morris to Hyde, and there are cases which hold that a description similar to that in the said several conveyances, does not give the fee in the adjacent highway to the grantee of the lot. See English v. Brennan (60 N. Y. 609).
There, the description of a lot in the city of Brooklyn was as follows : “Beginning at the southwest corner of Flushing and Claremont avenue, running thence westerly along Flushing avenue twenty-five feet; thence southerly seventy-nine feet to a point distant forty feet westerly from the westerly side of Claremont avenue.” Held, that the title of the grantee under that deed went to the side, not the center of that street. The court, however, say that the presumption that the owner of land abutting on a highway owns to the center is much less strong in respect to lots in large cities ; and Spring Place, at the time of the conveyance to Hyde and to plaintiff, was a country highway.
*117 The question is always one of intention, and it is difficult to imagine any motive which could have led Hyde to reserve the fee in the highway conveyed to him by Morris, which fee, charged as it was then by the public easement, could have had no appreciable value. The difference in the mode of describing the external boundaries, hi the deed from Hyde to Rubier, may here naturally be attributed to the fact that only a part of lot 138 was conveyed, that a new and different description, in some respects, was necessary, and that the draftsman, without consideration of what might be the possible legal effect, altered the whole.
In my opinion, the plaintiff, through mesne conveyance from Hyde, obtained all the right in fee of the strip of highway, Spring Place, adjacent to his lot, as far as said lot abutted on said highway.
It is contended by the learned counsel for the defendant that, before the execution and the recording of the deed from Morris to Hyde, Morris had parted with his right in the lot in question. In support of this position, he offered in evidence a contract between Morris and McG-raw and Houghton, whereby he agreed to sell the tract, including the lot in question, to them. This instrument was not recorded until June, 1850, and Hyde, the grantee of Morris, under deed recorded December 29, 1849, had no constructive notice, and there is no evidence that he •had personal notice of this agreement. The same rule applied to an instrument dated November 8, 1848, in which the last mentioned contract is recited. Morris further therein agrees to convey the streets, avenues, &c., to whomsoever may be authorized to receive deeds for the benefit of the inhabitants of the village of Morrisania. This instrument was not recorded until June 27, 1850.
An instrument in writing is also offered in evidence by the counsel for the defense, dated November 8, 1864, whereby said Morris quit-claims to the board of trustees of the town of Morrisania all the streets, avenues, &c., as designated on the said map, and also Spring Place, one *118 hundred feet wide. This paper was not recorded until January 18, 1865.
The instruments were only admissible in evidence in so far as they might tend to show an intention on the part of Morris, known to Hyde, to reserve the fee in Spring place, or to convey it to others.
In my opinion, they failed of attaining that result.
Let findings be prepared and submitted to me by the plaintiff’s counsel, in accordance with this opinion.
There should be judgment for the plaintiff.
By the Court. Freedman, J.—Under the circumstances disclosed by the whole case, no error appears to have been committed by the court below in refusing a postponement of the trial, or in denying defendant’s motion to have his deposition taken.
The controversy between the present parties to the action arises out of their respective claims to an award made by commissioners of estimate and assessment to unknown owners of a strip of land, the title to which was acquired by the corporation of the city of New York. Under the act of 1813, § 184 (re-enacted as § 993, ch. 410 of Laws 1882), the city might have paid the money representing the award into the supreme court, but this was not done. An action was then brought against the mayor, etc., of the city of New York, and at the commencement of said action the money was yet in the hands of the comp-' troller. Upon the application of the corporation counsel, the present defendant was substituted as defendant in the action, and the action against the may or, etc., discontinued, and the city discharged from all liability in the premises upon paying the money into this court subject to the further order of this court. Morris then made and served his answer herein as such substituted defendant, in which he denied plaintiff’s right to said money, and claimed the same as the owner of the fee of the premises, but in which he at the same time denied the jurisdiction of this court in the premises.
*119 Under the circumstances stated, the action could be maintained between the parties within the principles laid down in Fisher v. Mayor (57 N. Y. 344); and Spears v. Mayor (87 N. Y. 359). Of such an action the superior court of the city of New York has jurisdiction (Art. 6 of Const. as amended in 1869, § 12 ; Laws 1873, ch. 239 ; Code Civ. Proc. § 263, and notes, &c.)
The merits of the case have been so fully and ably discussed in the opinion filed by the learned judge below that a repetition of the points made by him would be a work of supererogation. It should be noticed, however, that in the case of English v. Brennan (60 N. Y. 609), cited by him, the description commenced at the corner of the avenues, and not at the corner of the lot, and that consequently that case did not involve the principle of construction applicable to the case at bar.
The exceptions taken by the defendant to the exclusion of evidence, and to the refusals to find as he requested, have also been carefully examined, but they disclose no error constituting ground for reversal.
The judgment and orders appealed from should be affirmed, with costs.
Sedgwick, Ch. J., and Ingraham, J., concurred.

 Tne omission of lines in this description was not a point of serious contention.