EDWARD J. PATTERSON, as Administrator, etc., of JENNIE PATTERSON TOWNSEND, Deceased, Respondent, *v.* THE CITY OF BINGHAMTON, Appellant.

*City of Binghamton — street opening — rights in the award, of parties interested — notice of recorded incumbrances — recovery of an award.*

The language of section 4 of title 7 of chapter 214 of the Laws of 1888 (the charter of the city of Binghamton), directing the commissioners appointed in proceedings for the opening of streets to ascertain and award to the respective owners of the property to be taken and to all persons or corporations interested therein such damages therefor (after deducting the benefits to the adjoining lands) as in their opinion shall be a just compensation for the property so taken, considered in connection with the general provisions found in the statute, indicates that all the property rights of the owners are to be acquired, and that the award to be made shall include compensation not only for the principal ownership but also for all interests in the property.

At the time an award is made for property taken for the purposes of opening a street the persons holding mortgages or other liens upon such property are interested therein, although they are not in form made parties to the proceeding. It is to be supposed that as the proceedings are of a public character, and notice thereof is required to be published as prescribed by statute, persons having interests in the property are apprised of the proceedings, although they do not in form appear therein.

The language of section 10 of title 7 of such act, construed in connection with the language of section 4 thereof, indicates that all persons interested in the premises sought to be acquired are interested, or are assumed to be interested, in the distribution of the award which is intended to work a cancellation or extinguishment of the ownership or interest in the property acquired, and it does not follow, because the commissioners omit to specify in detail the persons to whom the damages awarded by them belong, under all the facts and circumstances relating to the property taken, or because they in terms award the damages to specified persons who own the fee in the premises, that the rights of other persons interested therein were ignored or cut off.

When land is taken for public use the damages awarded take the place of the land in respect to all the rights which are dependent upon it and incident to it, and it may be said that in equity the award represents that portion of the land or the interest therein taken by virtue of the condemnation proceedings.

Where lands taken for the purpose of opening a street in the city of Binghamton are incumbered, at the time of the institution of the proceedings for such street opening, by a mortgage which has been recorded, and remain so incumbered, the city is presumed to have notice thereof.

Where the common council of the city of Binghamton directs that the amount of an award, made by commissioners for property taken for the purpose of open-

ing a street in such city, shall be paid to the clerk of the county of Broome, as the clerk of the Supreme Court, and such payment has been made, all persons who assert a claim to the amount awarded are limited to the remedy prescribed in section 10 of title 7 of the charter of the city of Binghamton (Chap. 214 of 1888), to wit, an application to the court held in the county of Broome, for directions for "the payment over on the ascertainment of the person entitled thereto," and an action against the city to recover the amount of the award is not maintainable.

APPEAL by the defendant, The City of Binghamton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 29th day of January, 1895, upon the decision of the court rendered after a trial at the Broome Special Term.

This action was commenced on the 17th day of August, 1892. The complaint alleges that Edward J. Patterson and Jennie Patterson were the owners of a parcel of land situated on the east side of Water street in the city of Binghamton in the year 1891; and that the defendant, a municipal corporation, about May 13, 1891, instituted proceedings in pursuance of its charter to lay out and open through the premises a public street fifty feet wide, known and called an extension of Henry street; and that thereafter it was determined that said public street should be laid out over a portion of said land, and that it was so laid out prior to October 27, 1891; that a commission was appointed by the County Court of Broome county to ascertain the damages to the land for the laying out of the street, and that subsequently, and on the 27th of October, 1891, an award in writing was made to the plaintiffs by the commissioners, awarding as damages for the laying out of the street the sum of $6,270 (plaintiffs were to deduct the sum of $100 if they elected to remove a building on said lands); it is alleged that the plaintiffs did so elect, and that the award became effectual and final on the 6th of November, 1891.

Defendant, in its answer, admits that the plaintiffs were owners and in possession of the land described in the complaint subject to certain mortgages and incumbrances, which are stated, and that in May, 1891, proceedings were instituted in pursuance of the charter to lay out and open over and through a part of the lands a public street. It also sets up that on the 5th of June, 1888,

Jennie Patterson and Edward J. Patterson executed a mortgage to Charles Schlager and another, covering the lands mentioned in the complaint, which was recorded, and that the same was, on the 26th of December, 1890, by the owners thereof, assigned to the Binghamton Trust Company, and its assignment was recorded on the 11th of September, 1891; that on the 12th of September, 1891, the owners of the mortgage commenced an action to foreclose the same and a *lis pendens* was filed in Broome county clerk's office, and that the plaintiffs in this action were made parties to that action; that a judgment was thereafter had directing a foreclosure and sale, and that, in pursuance of the decree, the premises were sold on the 6th day of February, 1892, including the premises described in the complaint, to one F. W. Downs for $6,525. A deed was executed by the referee to him, and it is alleged that he became entitled lawfully to and "seized of all the estate, right, title and interest, as well as all right and title to the award alleged in the complaint." It is alleged also that the surplus, $2,774.88, was paid over to the treasurer of the county, and that in proceedings for distribution the same was applied on several liens that had attached to the premises to a considerable extent, "and a balance of several hundred dollars remaining after such distribution was duly paid to and accepted by the plaintiffs herein, who well knew and understood that such proceedings and payment deprived them of all right, title or interest in or to the premises described in the complaint for which it was alleged the said award was made, and of all right or interest in or to the said award."

The trial court found that the city of Binghamton was not made a party to the foreclosure action, and at the time the foreclosure action was brought the Binghamton Trust Company knew of the proceedings then pending to lay out and open Henry street extension through the Patterson property; the trial court found as conclusion of law, viz.: "That the said award did not pass to the purchaser of the premises on the said foreclosure sale. That the plaintiff is entitled to a judgment against the defendant for the amount of said award, to wit, $6,170, with interest thereon from Dec. 1st, 1891." Exceptions were filed to the decision. Jane Patterson died after the action was brought, and the claim of Edward J. was assigned to her administrator.

*A. & A. W. Cumming*, for the appellant.

*Edward K. Clark*, for the respondent.

HARDIN, P. J.:

Chapter 214 of the Laws of 1888 contains the charter of the city of Binghamton, and in the seventh title sundry sections are found relating to proceedings to open streets. Defendant under those several sections instituted its proceedings to open Henry street extension. Section 4 of said title 7 defines to considerable extent the duties of commissioners appointed to appraise the damages to be awarded to parties whose lands or interests therein are taken in virtue of the proceedings. In the language of that section it is said : " They shall ascertain and award to the respective owners of property to be taken, and to all persons or corporations interested therein, such damages therefor (deducting the benefits to the adjoining lands) as in their opinion shall be a just compensation to them respectively." This language, in connection with the general provisions found in the statute, seems to suggest that the acquisition is to be made of all the property rights of the owners and that the award to be made is to be in compensation, not only for the principal ownership, but to compensate " all persons interested therein." At the time the award was made the persons holding the mortgage and other liens upon the property were interested therein, and although not in form made parties to the proceeding by name, it is to be supposed that the proceedings being of a public character, and the notices being required to be published prescribed by the statute, the persons having interests in the property were apprised of the proceedings, and, although they did not in form appear, it is to be presumed that it was the duty of the commissioners to ascertain and determine the extent and value of the respective interests taken or affected by the condemnation proceedings. In section 10 it is provided that " Immediately after the final determination of all proceedings in which any award shall have been made, the common council shall cause to be paid or tendered to the respective owners the amount awarded to each respectively." We think this language, construed in connection with the language found in section 4 which we have just quoted, indicates that all persons interested in the premises sought to be acquired are interested, and ought to be

assumed to be interested, in the distribution of the award which is intended to work a cancellation or extinguishment of the ownership or interest in the property acquired. Defendant's common council did not comply immediately with that part of section 10 which we have just quoted, by paying to the owners of the fee, or to the persons interested in the premises by way of liens, the amount of the award. After the fund was raised by the defendant for the purpose of liquidating the award, it was not immediately paid over, as a dispute arose as to what parties were properly entitled to it; it was claimed by the plaintiff in this action as well as by the purchaser of the premises or his assignee under the mortgage sale. Apparently, the section undertakes to provide for a case where a dispute arises as to the proper parties to receive the award, and in the subsequent language of section 10 it was provided that if for any reason the owner shall refuse to receive the same, or be incapacitated from receiving the amount, " or the right thereto be disputed or doubtful, the common council may make payment of such amount to the office of the clerk of the county of Broome, as clerk of the Supreme Court." This part of the statute seems to contemplate that where a dispute or a doubt arises such as was existing between the parties owning or interested in the premises condemned, it should be within the province of the common council to omit paying to either one of the parties. In the case in hand there was a dispute, and it may be said to have been doubtful whether the owner of the fee or the lienors interested therein should receive, at the hands of the common council, the money that was placed under its power and supervision to compensate for the property acquired through the condemnation proceedings. The common council, finding that the right to the award was disputed or doubtful, was authorized by the section to " make payment of such amount to the office of the clerk of the county of Broome, as clerk of the Supreme Court." The mode of ascertaining the parties claiming to own the award or to be interested therein is provided for in the section. It is made the duty of the clerk to " make a report to the Supreme Court at its first term, special or general, held thereafter in the county, of the amount thus deposited, * * * and the Supreme Court shall have authority, and it shall be its duty, at such term of the court, to order the investment of such money or the payment over on the ascertainment of the .

person entitled thereto." It is quite apparent that it was the duty of the common council, as soon as the dispute or doubt arose, to follow the provisions of the statute just referred to ; and it is probable that a mandamus would have been allowed to quicken the action of the common council if it was dilatory. It seems that the statute provides for a summary mode of a distribution of the award to the parties lawfully entitled to receive the same. It seems to be the spirit of the statute that the city is not authorized to take possession of the property until complying with the provisions which have just been referred to. Near the close of section 10 we find the following words : "Upon such payment or tender, or payment to the clerk being fully made, the land may be taken by the city, pursuant to the resolution of the common council, declaring their determination to make such improvement, and the said street or other improvement may then be opened, worked and used." Upon complying with this provision of the statute the defendant was authorized to enter into possession of the premises for which the award was allowed. We see no other provision in the charter authorizing expressly the defendant to enter upon the premises sought to be acquired by the condemnation proceedings. It does not seem to follow, because the commissioners omitted to specify in detail to whom the damages awarded by them belonged, under all the facts and circumstances relating to the property, or because they, in terms, awarded the damages to the Pattersons owning the fee, that the rights of the persons interested therein should be ignored or cut off.

In *Utter* v. *Richmond* (112 N. Y. 610) it was said that where land is taken for public use the damages awarded take the place of the land in respect to all the rights and interests dependent upon and incident to it ; and in the course of the opinion delivered in that case it was said : "No doctrine could be more clearly just than that, when land is taken for public use, the damages awarded are to take the place of the land in respect to all the rights and interests which were dependent upon and incident to it." In the case in hand the land was mortgaged at the time of instituting the proceedings and remained incumbered by the mortgage. It was upon record, and the defendant and all its officers are presumed to have notice thereof.

In *Cassidy* v. *The Mayor, etc.* (62 Hun, 358), it was said that where

an award is made to a specific person the city is not bound to pay the award to that person and thus leave the true owner to his action against such person. The award or fund raised by the city to discharge the same stood in the place of the land, and the city when parting with the fund would be entitled to take possession of the land. The fund remained for the purpose of satisfying the rights of the owners and lienors upon the land.

"That fund was the product of a paramount proceeding which cut off every right * * * both of owners and incumbrancers, so that there could be neither sale nor foreclosure as to that, and instead there remained an equitable lien upon the proceeds to be worked out by the court empowered to distribute." (*Matter of City of Rochester*, 136 N. Y. 90.)

In *Gates* v. *De La Mare* (142 N. Y. 313) it was said in the course of the opinion of ANDREWS, Ch. J., viz. : " If all the property covered by the mortgage had been taken by the city the defendant could have made no claim on the award except upon any surplus remaining after payment of the mortgage debt. * * * In law the final award represented the actual value of the land, no more and no less, and the land was primarily pledged as security for the mortgage and the priority of lien was transferred from the land to the award, and could not be subordinated to a lien subsequently created by Denninger in favor of the defendant." It may be said in equity that the award represents that portion of the land or the interest therein taken by the condemnation proceedings. (*Magee* v. *The City of Brooklyn*, 144 N. Y. 269.) Inasmuch as it appears in the case that the common council had directed the payment of the money to the clerk of the county of Broome, as the clerk of the Supreme Court, and that such payment has been made, it seems reasonable that the plaintiff, if, under the circumstances of this case, he is advised to make claim to the moneys, should be limited to the remedy prescribed in section 10 of title 7 of the charter, to wit, an application to the court held in the county of Broome for directions for " the payment over on the ascertainment of the person entitled thereto.

Inasmuch as the foregoing views, if adopted, lead to a reversal of the judgment, it is not deemed necessary to discuss the numerous questions raised by the defendant as to the validity of the condem-

nation proceedings instituted by it, conducted step by step until it reached the stage where its common council authorized the payment of the money which it had received in liquidation of the assessment made to meet the damages for taking the lands to open Henry street.    Inasmuch as the conclusion has been stated as above, it is not necessary in order to determine the ri ht of the plaintiff to hold the present judgment to authoritatively pass upon the question. Inasmuch as the defendant has been active in instituting the proceedings and conducting them and in claiming benefits under them, it may be said under such circumstances its assertion that the condemnation proceedings are irregular does not come to the court with very much grace.    However, we omit to pass conclusively upon the question as to the validity of the proceedings at this time.

MERWIN, J., concurred; MARTIN, J., not voting.

Judgment reversed and a new trial ordered, with costs to abide the event.