EDWARD J. PATTERSON, as Administrator of JENNIE PATTER-
    SON TOWNSEND, Deceased, Appellant, *v.* THE CITY OF BING-
    HAMTON, Respondent.

MUNICIPAL CORPORATIONS — ACTION TO RECOVER AWARD FOR LAND TAKEN FOR STREET — REMEDY PROVIDED BY CHARTER.  While the city of Binghamton was taking the necessary legal steps, under its charter, to pay an award for land condemned by it for street purposes into court (by reason of a contest between the original owner of the land and a person who had purchased it on a foreclosure sale after the award had become final), and on the day on which the mayor approved the resolution of the common council for such payment, the original owner began a common-law action against the city to recover the award  On the next day the award was duly paid into court.  The city charter provided a speedy and sufficient method for a judicial determination of adverse claims to awards so paid into court.  *Held* (without determining under what circumstances a common-law action will lie to recover an award in the custody of a municipality), that, under the facts disclosed, the action was improperly brought, at a time when it could not be justified, and that a dismissal of the complaint, on the ground that the plaintiff's remedy was confined to the proceedings pointed out by the charter, was proper.
    *Patterson* v. *City of Binghamton*, 4 App. Div. 615, affirmed.

(Argued October 15, 1897; decided November 30, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 30, 1896, which affirmed a judgment dismissing the complaint entered upon a decision of the court on trial at Circuit, a jury having been waived.

This action was commenced in the name of Edward J. Patterson and Jennie Patterson, plaintiffs. Thereafter Jennie Patterson died, intestate, bearing the name of Jennie Patterson Townsend by marriage. Edward J. Patterson was appointed her administrator, and his personal interest was transferred to the administrator, and Edward J. Patterson, as such administrator, was substituted for the original plaintiffs herein, the action being continued in the name of such administrator as sole plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Roger P. Clark* for appellant. Plaintiff can maintain an action for the award. (*Sage* v. *City of Brooklyn,* 89 N. Y. 189 ; *Supervisors of Erie* v. *City of Buffalo,* 63 Hun, 567 ; *Ganson* v. *City of Buffalo,* 1 Keyes, 456 ; *Smith* v. *City of Buffalo,* 44 Hun, 156 ; *People ex rel.* v. *Miller,* 39 Hun, 557 ; 114 N. Y. 636 ; *Buck* v. *City of Lockport,* 6 Lans. 251 ; *Fisher* v. *Mayor, etc.,* 57 N. Y. 344 ; *Reining* v. *N. Y., L. & W. R. Co.,* 128 N. Y. 170 ; *Wood* v. *Suprs. Monroe Co.,* 50 Hun, 6 ; *In re Hatch,* 11 J. & S. 91.) Plaintiff is the owner of the award, and it did not pass to the purchaser of the land on the sale under the foreclosure of the mortgage. (*People ex rel.* v. *Com. Council of Syracuse,* 78 N. Y. 59 ; *In re Dept. of Parks,* 73 N. Y. 565 ; 6 Am. & Eng. Ency. of Law, 626 ; *People ex rel.* v. *Brooklyn,* 1 Wend. 323 ; *Suprs. of Erie* v. *City of Buffalo,* 63 Hun, 568 ; *Reinhardt* v. *City of Buffalo,* 39 N. Y. S. R. 305 ; *Hawkins* v. *Trustees of Rochester,* 1 Wend. 53 ; *Mayer* v. *Mayor, etc.,* 101 N. Y. 288 ; *King* v. *Mayor, etc.,* 102 N. Y. 175 ; *Cassidy* v. *Mayor, etc.,* 62 Hun, 367 ; *Sage* v. *City of Brooklyn,* 89 N. Y. 189.) The defense, that the proceedings of the city of Binghamton

were so defective as to make void the award, is untenable. (2 Herman on Est. & Res Judicata, 1366, § 1222; *Chicago* v. *Wheeler*, 25 Ill. 478; *People* v. *Lowell*, 9 Mich. 144; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *Buell* v. *Village of Lockport*, 8 N. Y. 57; *Viele* v. *T. & B. R. R. Co.*, 20 N. Y. 187; *In re Washington St.*, 38 N. Y. S. R. 346; *Grunberg* v. *Blumenthal*, 66 How. Pr. 62; *In re Cooper*, 93 N. Y. 512; *Reinhardt* v. *City of Buffalo*, 39 N. Y. S. R. 305; *Mayor, etc.*, v. *M. R. Co.*, 143 N. Y. 26; *In re Woolsey*, 95 N. Y. 135; *People ex rel.* v. *Trustees of Haverstraw*, 80 Hun, 385; *Akin* v. *Water Comrs.*, 82 Hun, 267.)

*Alex Cumming* for respondent. The right to the award was disputed, and the act of defendant in paying the amount awarded to the office of the clerk of the county of Broome, as clerk of the Supreme Court, with a copy of the resolution of the common council, was a compliance with the provisions of section 10, title 7, of the charter, and a defense to this action. (Dillon on Mun. Corp. §§ 94, 993; *R. R. Co.* v. *Mayor, etc.*, 1 Hilt. 562; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68; *Beach* v. *Newark*, 33 N. J. L. 129; *Cassidy* v. *City of New York*, 62 Hun, 358; *Lansing* v. *Smith*, 4 Wend. 10; *People* v. *Earl*, 16 Abb. [N. S.] 64; *Swift* v. *Mayor, etc.*, 83 N. Y. 528; *Donnelly* v. *City of Brooklyn*, 121 N. Y. 9; *In re Church*, 92 N. Y. 1; *Stuart* v. *Palmer*, 74 N. Y. 185.) Should the question discussed in point one be waived, mandamus and not action would be the proper and only remedy. (*In re Church*, 92 N. Y. 1; *Swift* v. *Mayor, etc.*, 83 N. Y. 528; *Donnelly* v. *City of Brooklyn*, 121 N. Y. 9; *People* v. *Earl*, 16 Abb. [N. S.] 64; *People ex rel.* v. *Brennan*, 45 Barb. 457.) The foreclosure of the mortgage given by the Pattersons, and the sale thereunder, cut off all their title and equity of redemption to the premises, and to the award and amount awarded for taking same for street purposes. (*Hooker* v. *Martin*, 10 Hun, 302; *Bank of Auburn* v. *Roberts*, 45 Barb. 407; 44 N. Y. 192; *In re John & Cherry Sts.*, 19 Wend. 659; *Utter* v. *Richmond*, 112 N. Y. 610; *Gates* v. *De La Mare*, 142 N. Y. 307;

*Magee* v. *City of Brooklyn*, 144 N. Y. 265 ; *Delap* v. *City of Brooklyn*, 144 N. Y. 265 ; *In re Thompson*, 89 Hun, 32 ; *Packer* v. *R. & S. R. R. Co.*, 17 N. Y. 287 ; Jones on Mort.. § 1652 ; *Reign* v. *Parker*, 8 Cush. 145.) The condemnation proceedings were defective and failed. to comply with the requirements of the charter of the city of Binghamton or to confer any right on the County Court to appoint the commissioners to ascertain and report the just compensation to be paid to the owners of the property proposed to be taken for the. opening of Henry street. (*In re City of Buffalo*, 78 N. Y. 362 ; Dillon on Mun. Corp. §§ 604, 605 ; Beach on Pub. Corp. § 665 ; *Cruger* v. *H. R. R. R. Co.*, 12 N. Y. 190 ; *Adams* v. *S. & W. R. R. Co.*, 10 N. Y. 328 ; *N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546 ; *In re S. I. R. T. Co.*, 103 N. Y. 251 ; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1 ; *In re R. E. R. Co.*, 123 N. Y. 351 ; *In re P. B. Co.*, 108 N. Y.. 483.)

*A. D. Wales* for Binghamton Opera House Company. The plaintiff cannot maintain this action because an action at law is. not the proper remedy. (*Sage* v. *City of Brooklyn*, 89 N. Y. 189 ; *Heiser* v. *Mayor, etc.*, 104 N. Y. 72 ; *Reining* v. *N. Y., L. E. & W. R. Co.*, 128 N. Y. 170 ; *Calking* v. *Baldwin*, 4 Wend. 667 ; *Kimble* v. *W. W. V. C. Co.*, 1 Carter, 285 ; *Brown* v. *Beatty*, 34 Miss. 228 ; *Gowen* v. *P. R. R. Co.*, 44 Me. 140 ;. *Town of Lebanon* v. *Olcott*, 1 N. H. 339 ; *Orr* v. *Quinby*, 54 N. H. 602 ; *Henniker* v. *C. R. R. Co.*, 29 N. H. 146 ;. *McKinney* v. *M. N. Co.*, 14 Penn. St. 65 ; *Koch* v. *W. W. Co.*, 65 Penn. St. 288 ; *Fehr* v. *S. N. Co.*, 69 Penn. St.. 161.) The Pattersons have no interest in the award. It passed to F. W. Downs on the foreclosure sale. (Code Civ. Pro. §§ 1671, 1672 ; *Rector, etc.*, v. *Mack*, 93 N. Y. 488 ; *Mygatt* v. *Coe*, 8 N. Y. S. R. 434 ; *Kursheedt* v. *U. D. S. Inst.,* 118 N. Y. 358 ; *Batterman* v. *Albright*, 6 N. Y. S. R. 334 ;. *Fuller* v. *Scribner*, 76 N. Y. 190 ; *Stevenson* v. *Fairweather*, 21 How. Pr. 449 ; *In re City of Rochester*, 136 N. Y. 83 ; *Gates* v. *De La Mare*, 142 N. Y. 308 ; *Magee* v. *City of*

*Brooklyn*, 144 N. Y. 265.)   The city is not estopped, either as a matter of law or equity, from raising the question of the validity and regularity of the condemnation proceedings. (*In re Comrs. of Wash. Park*, 56 N. Y. 150; *Hill* v. *Hill*, 4 Barb. 419; *Jackson* v. *Spear*, 7 Wend. 401; *Osterhout* v. *Shoemaker*, 3 Hill, 513; *Sparrow* v. *Kingman*, 1 N. Y. 246; *Glen* v. *Gibson*, 9 Barb. 634; *Green* v. *Collins*, 86 N. Y. 250, 251; *Douglas* v. *Cruger*, 80 N. Y. 19, 20; *Lytle* v. *Beveridge*, 58 N. Y. 606; *Lee* v. *Adsit*, 37 N. Y. 95.)   The condemnation proceedings taken by the city were absolutely void from the many gross irregularities which existed therein. (*Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *Newell* v. *Wheeler*, 48 N. Y. 487, 490; *Peyser* v. *Mayor, etc.*, 70 N. Y. 497; *In re City of Buffalo*, 78 N. Y. 362; *Gilmore* v. *City of Utica*, 15 N. Y. Supp. 274; Mills on Em. Domain, § 101; *In re N. Y. & O. M. R. R. Co.*, 40 How. Pr. 335; *Rhemier* v. *Union*, 31 Minn. 289; *Anderson* v. *City of St. Louis*, 47 Mo. 479.)   The right of the opera house company to insist upon its title to the land in question on account of the invalidity of the condemnation proceeding has in no way been waived. (*C. N. Bank* v. *Clark*, 139 N. Y. 307; *Burk* v. *Ayers*, 19 Hun, 23; *In re City of Rochester*, 136 N. Y. 89.)

BARTLETT, J.   The duly constituted authorities of the city of Binghamton, in the year 1891, continued Henry street from Washington to Water streets, this work being known as the Henry street extension.   Among other lands condemned for this purpose was a portion of the premises of the plaintiffs. This action is brought to recover the award in the condemnation proceedings.

The original answer in this case contained substantially an agreed state of facts, to which the plaintiffs demurred as not containing a defense.

The issue of law on this demurrer resulted in a decision in plaintiffs' favor, with leave to defendant to answer over. Under the amended answer the case has been twice tried. At the first trial a judgment was directed in favor of plaintiffs.

The General Term reversed on the ground that the plaintiffs' remedy was confined to the proceedings pointed out by the charter of the city of Binghamton.    (88 Hun, 272.)

At the second trial the court followed the decision of the General Term and dismissed the complaint, and this judgment was affirmed.    From this affirmance the present appeal is taken.

This case is presented under a stipulation that the findings contain all the facts.

The question to be considered is whether this action at law will lie to recover the award under the peculiar circumstances of the case.

In April, 1891, a petition was presented to the common council of the city to open the new street and resulted in a resolution the following month to make the improvement and to appoint a commissioner to report upon the land required and the probable expense.

In June, 1891, this report was filed indicating the land required, including that of plaintiffs, and estimating the total expense.    By reason of some irregularity a second commissioner was appointed for the purpose above indicated, who made a similar report on the 3rd of August, 1891.

Hearings were duly had before the common council, and resulted in a resolution on the 24th of August, 1891, describing the lands to be taken and the estimated cost, and directing the city engineer to make a survey of the proposed improvement with a map.    This resolution was duly complied with.

In September, 1891, the common council passed a resolution declaring its intention to make the improvement, and issued a notice that an application would be made to the County Court for the appointment of three commissioners to ascertain and report the compensation to be paid to persons and associations whose property was to be taken.

The court duly appointed the commissioners, who made a report fixing awards and giving to the plaintiff $6,270.    This report was filed with the common council under the provisions of the charter, and no appeal having been taken the awards named therein became final on the 5th day of November 1891.

The building on the premises of the plaintiffs was valued at $100 for the purpose of removal, and the plaintiffs having elected to remove the same, their award was reduced to $6,170.

On the 30th of November, 1891, the common council directed the commissioners to proceed to assess the benefits and make out an assessment roll to pay the awards in pursuance of the charter. These assessments were duly made and the money received by the city to pay the awards and expenses.

The precise date when the tax was collected and the city received the money does not appear in this record.

Under the charter of the city of Binghamton, the municipality acquired an easement over the lands condemned, and not an absolute fee. This easement involved the greater portion of the plaintiffs' property, leaving narrow strips or parcels thereof on the north and south sides of the street.

It seems to be conceded that the portion of the premises not taken was of comparatively little value, and the lot of plaintiffs was substantially condemned by the city.

At the time these condemnation proceedings were instituted, the Binghamton Trust Company held a mortgage thereon to secure the payment of $3,000 and interest. There were also a second mortgage on the premises to secure the payment of $800, a third mortgage for $500, and a considerable number of small judgments.

On the 12th of September, 1891, the Binghamton Trust Company began a foreclosure of its mortgage, and all of these liens were at the time unsatisfied. The sale in foreclosure was made by the referee on the 6th day of February, 1892, and the premises were struck off to Francis W. Downs for the sum of $6,525.

The judgment of foreclosure was duly satisfied, together with all the liens upon the premises, and there remained a surplus of $700, which was paid to plaintiffs in this action.

It is found that the plaintiffs duly demanded payment of the award, which was refused, and on the 17th day of August, 1892, they brought this action to recover the same.

It is further found that, six days prior to the institution of this suit, and on the 11th day of August, 1892, the common council passed a resolution reciting that the right to the award made to the plaintiffs was disputed and that a warrant be drawn for the amount of it in favor of the office of the clerk of the county of Broome and delivered to him, and that the corporation counsel prepare the proper statements and papers to accompany payment as provided by the city charter.

Under the charter the mayor of the city has a week in which to approve any resolution passed by the common council, and six days after the passage of this resolution, to wit, on the 17th day of August, 1892, the mayor duly approved it, and the next day, the 18th day of August, 1892, the award was duly paid to the county clerk as the clerk of the Supreme Court.

It thus appears that while the city was taking the necessary legal steps to pay this award into court, by reason of the contest between the purchaser at the foreclosure sale and the plaintiffs, this action was commenced on the day the mayor approved the resolution of payment and the day before the money was actually paid into court.

We here have the entire amount of the award in cash placed in the custody of the court to pay the plaintiffs or the purchaser at the sale, as their rights may be made to appear.

From this point on the city of Binghamton was in the attitude of a stakeholder admitting liability by paying the fund into court. The claimants were not only abundantly secure with the fund in the possession of the court, but the city charter provided a speedy and sufficient remedy for a determination of the adverse claims, it being the duty of the clerk at the first term of the Supreme Court, Special or General, held in the county, after receipt of the moneys, to make a report of the amount thus deposited, and the court is required at that term to order the investment of the money or the payment over on the ascertainment of the person entitled thereto. (Charter, title VII, section 10.)

This is a proceeding in which the city has no interest what-

ever.   This action was begun at a time when it cannot be justified, and seems upon its face to have been an effort to anticipate the final act of payment into court after the resolution of the common council authorizing it to be done.   The approval of the resolution by the mayor, as already pointed out, was August 17th, and the payment August 18th, which was certainly most speedy action, when we consider that not only was the warrant to be drawn, but the corporation counsel had to submit therewith certain statements.

We are not called upon to determine at this time under what circumstances a common-law action will lie to recover an award in the custody of a municipality, but we hold that, under the facts now disclosed, this action was improperly brought, and there was no error in dismissing the complaint.

The judgment appealed from should be affirmed, with costs.

· O'BRIEN, J. (dissenting).   This action was commenced on the 17th day of August, 1892, to recover the amount of an award of damages for the taking of the plaintiff's land for street purposes.   On a trial before the court the plaintiff recovered.   The judgment was reversed by the General Term and a new trial granted.   (88 Hun, 272.)   On the second trial the court, following the view of the General Term, dismissed the complaint, and the judgment having been affirmed by the Appellate Division (4 App. Div. 615), the plaintiff has appealed to this court.

The case has always been and is now embarrassed by many collateral and irrelevant considerations.   The complaint states a very simple cause of action at law for the recovery of money only.   It alleges that in the year 1891 the plaintiff was the owner in fee simple and in possession of a parcel of land in the city of Binghamton; that the authorities of that city in the month of May of that year duly instituted proceedings under its charter to lay out a street fifty feet wide through the land; that thereafter such proceedings were duly had and it was duly determined that the street should be laid out over a portion of the land, and that it was laid out prior

to the 22d day of October, 1891; that commissioners were duly appointed in the proceedings for the purpose of ascertaining and awarding to the plaintiff damages as compensation for the land so taken, and that the commissioners made an award in writing to the plaintiff, as his damages for laying out the street, in the sum of $6,270; that no objections were ever filed by the city to this award; that it became effectual, due, payable and incontestable in the month of November, 1891, when the final determination of all proceedings in which the said award was made occurred; that no appeal was ever taken from the award, or from any of the proceedings connected with the laying out of the street; that the provisions of the defendant's charter required it to pay the plaintiff the award at once upon the termination of the proceedings; that demand has been made of the defendant for the payment of the same, but it has neglected and refused to do so.

It will be seen, therefore, that the plain purpose of the action was to enforce an obligation on the part of the defendant for the payment of money which should have been paid during the month of November, 1891. There is really no contest with respect to the facts stated in the complaint. The only defense interposed is based upon the following facts, stated in the defendant's answer:

*First.* That on June 15th, 1888, the plaintiff executed a mortgage on the land, with other lands, for $3,000, to certain parties named, and, subsequently, other junior mortgages to other parties.

*Second.* That on the 12th of September, 1891, before the award was made, the Binghamton Trust Company, then owning and holding the first mortgage above described, commenced an action to foreclose the same, and judgment in that action was entered on the 4th of December, 1891, which determined that there was $3,179.50 due upon the mortgage, and directed a sale of the premises in the usual form. This mortgage covered a parcel of land in the city of Binghamton, from which the land for the street had been taken as above described.

*Third.* That on the 6th of February, 1892, in pursuance of the judgment, the premises described in the mortgage were sold to one Francis C. Downs for the sum of $6,525, which sum was not only sufficient to pay the mortgage, but also all subsequent or junior liens upon the premises.

*Fourth.* That six days thereafter, and on the 12th of February, 1892, Downs, the purchaser at the foreclosure sale, conveyed the premises so purchased by him to the Binghamton Opera House Company for the consideration of $6,525.

*Fifth.* The defendant then alleges, upon information and belief, that the award in controversy passed to Downs with the lands upon the sale, and in the same way to the opera house company.

*Sixth.* It is then alleged that the opera house company, claiming to own and to be entitled to the possession of the premises so taken by the defendant for the purposes of a street, and for which the award was made, brought an action against the defendant in the Supreme Court, which is still pending and undecided, in which it is alleged that no valid or legal appropriation or condemnation of the land, or award therefor, was ever made, and that the defendant has no right or title to the premises; that no jurisdiction to make the award was ever acquired, and that judgment for the recovery and possession of the property is demanded.

The trial court has found all the material facts stated in the complaint, and also the facts alleged in the answer touching the execution of the mortgage and the foreclosure thereof, and sale under the judgment.

The opera house company is not a party to this action. It was not a necessary party for any purpose which the plaintiff had in view, but it was undoubtedly a necessary party for the protection of the defendant's rights, and could have been brought in as a defendant upon its application. There is nothing in the record to show that the opera house company makes any claim to this award. On the contrary, the record shows that it disclaims any right to it; since it has commenced an action of ejectment to recover the land it cannot, of course,

at the same time, claim the award. To insist that it owns the award would be to defeat its action of ejectment for the recovery of the land. If it owns the award, it certainly does not own the land. Moreover, it has elected as its remedy to follow the land, upon the theory that all proceedings for its condemnation and appropriation by the city were void, including, of course, the award in question. The only issue in this case, therefore, is between the plaintiff and the defendant, and the only defense pleaded is, in effect, that the plaintiff has no right of action to recover the award in question, since he is not the owner thereof.

The defense interposed is that the award in question represents land which was originally embraced in the mortgage; that the award when made became appurtenant to the estate conveyed by the mortgage, and that upon the sale of the land under the judgment of foreclosure the award passed with it as a part and parcel of the estate conveyed, without any special words of assignment. Upon this proposition the defendant must either stand or fall. We are not concerned with any claims of the opera house company. They must be determined in the action brought for that purpose and not in this action.

The defendant, when sued by the plaintiff for this award, had a simple and effectual remedy for its protection against conflicting claims. It could have paid the fund into court and interpleaded the conflicting claimants, if any, for the purpose of settling their own controversy, with respect to the ownership of the award, between themselves, and it could then have been discharged from the litigation. For some reason this course has not been pursued, and it seems that the defendant is in the attitude of defending two separate actions at law, one by this plaintiff for the recovery of the award, and the other by the opera house company for the recovery of the land. But the question now is whether it has any legal defense to the plaintiff's cause of action.

This brings us to the consideration of the question whether the award passed to the purchaser upon the referee's sale. Of

course, if it did pass under the judgment of foreclosure it would also pass on a sale under execution, and if this award which represented the damages which the plaintiff sustained by the taking of his land for street purposes would pass by a sale under foreclosure, or on execution, so would a judgment which he had recovered against some trespasser or wrongdoer for injury to the land embraced in the mortgage.

Of course, if the award passed upon the sale of the land by the referee under the judgment of foreclosure and vested in the purchaser, it must also pass under every subsequent sale to every subsequent purchaser so long as it remained unpaid.

That such a contention can find no support in the law of this state will be seen from the authorities on the subject. It is not true that an award made to the owner of the equity of redemption for damages to the land during the period of his ownership is land. In equity it is treated as land for one purpose only, and that is for the purpose of meeting any deficiency that may arise upon foreclosure of an existing mortgage which was a lien upon the land when taken by the city. For every other purpose it is a claim or right personal to the owner of the equity of redemption. It is personal property that passes at death to the personal representatives and not to the heir. (*Ballou* v. *Ballou*, 78 N. Y. 325.) It is a chose in action incapable of sale upon execution. It is in the nature of a judgment between the parties, conclusive of the rights of either or both. It is, in a broad sense, a contract within the meaning of that provision of the Constitution of the United States which forbids the impairment of contracts by state legislation. (*People ex rel. Reynolds* v. *Common Council of Buffalo*, 140 N. Y. 300.)

When the award was made it vested in the owner of the land, subject to the equitable lien of the mortgagee for any deficiency in the mortgage debt that arose upon a sale of the property. The equitable lien of the mortgagee is personal to him and for his security only. If, upon the sale under the foreclosure judgment, there is no deficiency, then there is no longer any lien upon the award. Neither the mortgagee nor

the referee at the sale can transfer to the purchaser any right to the award any more than they can sell the personal bond of the owner which the mortgagee holds as a personal security for the debt. If the award passes at all to the purchaser it must be at the moment of the sale and it must pass in every case, whether there is a deficiency or not. Thus the mortgagee, for whose sole benefit equity impresses a lien upon the award, would always lose the benefit of this lien, since it can never be ascertained whether there will be a deficiency or not until after the sale when, upon the contention in this case, the title to the award will have passed with the land to the purchaser.

The title to an award for damages made to the owner of the equity of redemption never passes, under the circumstances of this case, to the purchaser upon a sale under a judgment of foreclosure any more than a judgment in favor of the owner against a trespasser for injury to the freehold which impaired the security of the mortgagee. The mortgagee in case of a deficiency may reach the award, so far as necessary to meet such deficiency, by an independent proceeding in equity, and with this qualification the owner of the equity of redemption has the whole legal and equitable title and right to the award when made to him.

There is no authority for the contention that an award passes upon a sale and conveyance of land as a part of the estate conveyed or appurtenant to it, but the contrary has been decided in numerous cases. It will not pass by a conveyance of the owner unless specially assigned or described, and for a greater reason it will not pass by a deed from a referee upon a sale under a mortgage acting in the execution of a mere power of sale.

A conveyance by a referee under a judgment of foreclosure has no other effect than is prescribed by statute. It vests in the purchaser only the same estate as the mortgagee would have acquired by foreclosing the equity of redemption. (Code, § 1632.)

The contention of the defendant in this case, that such a

deed had not only the effect of vesting the purchaser with title to the land remaining after the easement for a street was taken, but that it also swept away every vestige of title which the plaintiff had to personal property of the value of more than $6,000, cannot be upheld. There is no principle of law or equity upon which to build such a claim. This money did not even represent any land that the referee sold or that the purchaser bid upon, but land that the city had taken for public purposes three months before to the knowledge of all the parties to the transaction. Every one knew that the sale and the bid and the conveyance related only to what was left. This appears from the record, and no one makes any claim to the contrary. It is admitted that the part of the mortgaged premises so sold and purchased commanded a price sufficient to pay the mortgage and all other liens. That certainly disposed of all claim on the part of the mortgagee. His debt was paid and his mortgage was extinguished. The purchaser never had any claim on the award or the land that it represented. He got just what he bid upon, and purchased, namely, the balance of the land. It is not even claimed that he was deceived or defrauded, or that he acted under any mistake. He has never asked to be relieved from his bid or to reopen the sale on any such grounds, which he might have done had the grounds existed. Neither the purchaser nor his grantee are making any claim before this court or elsewhere that the award in question passed to them upon the sale by the referee. The city is the only party that raises any such question. All the interest that it can possibly have in the question is to pay the award to the rightful owner and to be discharged from all liability. We have no equities to deal with, but only the naked proposition that, upon a sale of land by a referee and judgment of foreclosure, an award for damages, made three months before, to the owner of the equity of redemption, passes to the purchaser because it represents the value of an easement taken by the city for a street over part of the land mortgaged; and that although both the mortgagee and the bidder at the sale knew perfectly well that

the easement had been excluded from the mortgage and judgment, and, hence, could not possibly pass upon the sale.

The question is not even whether some other person may not have some equitable interest in the award before distribution, but whether the plaintiff has been so completely divested of all interest as to disable him from maintaining an action against the city, which is concededly bound to pay it. Whenever there is a deficiency at a sale in the mortgage debt, there arises an equity between the owner of the equity of redemption and the holder of the mortgage which will be enforced against the award.

But there is no such equity between the mortgagor and the purchaser. The latter gets nothing but the legal estate. If the mortgagor holds a judgment or an award against a third party for damages, growing out of an injury to land, that does not pass to the purchaser and is not conveyed by the deed, unless in terms described therein, which is not claimed here. (*Donnelly* v. *City of Brooklyn,* 121 N. Y. 9; *McCormack* v. *City of Brooklyn,* 108 N. Y. 49; *Genet* v. *City of Brooklyn,* 99 N. Y. 300; *Sage* v. *City of Brooklyn,* 89 N. Y. 189; *Spears* v. *Mayor, etc.,* 87 N. Y. 359; *King* v. *Mayor, etc.,* 102 N. Y. 171; *Porter* v. *M. E. R. Co.,* 120 N. Y. 289; *McFadden* v. *Johnson,* 72 Pa. St. 335; *Losch's Appeal,* 109 id. 72; *Home Ins. Co.* v. *Smith,* 28 Hun, 296; *Matter of City of Rochester,* 136 N. Y. 83.)

In *Matter of the City of Rochester* (*supra*) Judge FINCH, speaking of an award of this character, said: "The appellant further contends that title to this fund passed to the respective purchasers upon the foreclosure sales under the two prior mortgages, upon the ground that the fund stood in the place of the land. It was to be so regarded for the purpose of measuring and settling the rights of the parties interested, but the paramount right of the city withdrew from the lien of the mortgages the water right, condemned and transferred it to the city free and discharged from the mortgage liens. That occurred before either sale. The balance of the land only could be sold and conveyed on the foreclosure; the ref-

eree's deed could convey and did convey only that balance; and the right of the mortgagees became merely an equitable lien upon the fund in the hands of the court to the extent of any deficiency which the land sold did not pay.  *   *   *

"Neither foreclosure gave title to the fund, or altered .the duty of proper distribution by the court. That fund was the product of a paramount proceeding which cut off every right in the water, both of owners and incumbrancers, so that there could be neither sale nor foreclosure as to that, and instead there remained an equitable lien upon the proceeds to be worked out by the court empowered to distribute."

In *King* v. *Mayor*, etc. (102 N. Y. 172), the same learned judge, discussing the nature of a similar award in a controversy with respect to the party who owned it, described it as a right personal to the owner of the land, and not passing by deed unless expressly described and intended to be transferred. He said of the award in that case: "It was not in terms embraced in the deed, and was a mere right of action not running with the land. The damages were like those which follow a trespass or wrongful taking of property, although the wrong is made rightful by the legislative authority and the damages are awarded as compensation. That has been held in cases where a railroad corporation has taken an owner's land, and thereafter, but before actual assessment, the owner conveyed the land. The assessed damages have been awarded to the owner as not passing by the deed. (*Schuylkill Nav. Co.* v. *Decker*, 2 Watts (Penn.), 343; *McFadden* v. *Johnson*, 72 Penn. St. 335.)"

In the case of *Home Insurance Company* v. *Smith* (*supra*) there was a controversy with respect to the title to an award of this character, between parties claiming under a transfer from the original owner of the land, to whom the award had been made, and the purchaser under a mortgage sale. Judge DANIELS stated the principle by which the respective rights of such parties are to be determined in the following language: "By the confirmation of the award included in the commissioner's report, the part of the property taken for opening and

widening the avenue became vested in the city. (*Matter of Opening Eleventh Avenue*, 81 N. Y. 437, 453.) And this award was substituted for it. The fact that an appeal was taken from the order of confirmation and prosecuted until a final decision was obtained upon it, on the 18th day of October, 1881, in the Court of Appeals, in no manner changed the effect of the confirmatory order. For, by the final decision made that order was affirmed, and it consequently was left in full force and effect as it had been made by the Special Term in November, 1880. These proceedings therefore had as completely changed the title to so much of the land as was required for the avenue, as a voluntary conveyance of it, executed by David H. and John B. Dunham to the city would have done. And as they were at the time of the entry of the confirmatory order, the owners of the property, it followed that the award was payable to them, subject only to the previous satisfaction of the mortgage. To that extent and to that extent alone the lien of the mortgage was removed from the land and attached to the award made payable because of its appropriation. And for that reason the assignment of the mortgage by the mortgagee to the plaintiff, and its subsequent foreclosure and the sale had under it, entitled the purchaser to no more of the property than that remaining after excluding what was required for the street. That was all the land that the mortgage continued an incumbrance upon, after the residue had been devoted to a public purpose, and in case that failed to produce the mortgage debt the plaintiff, in that event, was entitled to resort to the award to make up the deficiency, but it had no other right or authority over it.

"The result of these considerations is that the purchaser, under the foreclosure judgment, obtained no title whatever to the award made for the land taken for the avenue; for having been acquired by means of the proceedings taken by the city, it was no longer liable to be sold under the mortgage.

"The lien upon it was divested and transferred to so much only of the award as might be required to extinguish it; and accordingly the assignment of it by the purchaser under the

judgment gave the plaintiff no legal right to the money in controversy. The circumstance that the title conveyed by means of a foreclosure is that incumbered by the mortgage at the time when it was given, will not change the rights of the parties in this respect. For the part of the land itself for which the award was made was as completely excluded by the proceedings from the mortgage as though it had never been incumbered by it.

" The rights of the parties, after that, were confined to the fund and not to the property out of which it originated. And the extent of that to which the plaintiff succeeded as the assignee of the mortgage was limited to the amount of money required for the payment of the mortgage debt after the sale of the remaining portion of the property.

" The right to the balance of the award, vested in the persons owning the equity of redemption. By virtue of their title, this money belonged to them, at least so much of it as would remain after the payment of the mortgage debt. That followed necessarily from the fact that they owned the property at the time when it was appropriated by virtue of the order confirming the report, subject only to the payment of this mortgage." The doctrine of this case was recognized recently in this court in *Gates* v. *De La Mare* (142 N. Y. 307), and its application pointed out by Judge Andrews in his opinion.

The same principle was decided by the Supreme Court of Pennsylvania, where it was held that the owner of land is the person entitled to the damages for taking a portion of it for a public street ; that the damages are a personal claim of the owner of the property at the time of the injury and do not run with the land or pass by a deed though not specially reserved. (*Lasch's Appeal*, 109 Penn. St. 72 ; *McFadden* v. *Johnson*, 72 Penn. St. 335.) Following those cases it was held in *Porter* v. *M. E. R. Co.* (120 N. Y. 289) that the owner of land having a claim for damages to it in consequence of the construction of an elevated railway was not divested of this claim by a sale of the land upon a judgment foreclosing a mortgage given prior to the injury, the sale being subse-

52

quent.   This was upon the ground that the right of action for the injury while the mortgagor had title was personal to him and did not pass with the land to the purchaser at the sale. If the damages had been liquidated by a judgment or award, as in this case the principle would of course be the same.

The authorities cited establish two propositions applicable to this case : (1) That the referee upon the foreclosure sale sold and conveyed only that portion of the mortgaged premises which remained after the street had been laid out by the city. In the language of Judge DANIELS, that part of the land for which the award was made was as completely excluded by the proceedings from the mortgage as though it had never been incumbered by it.   The referee sold only such portion of the land mortgaged as remained after ·the street was laid out.   The purchaser bought nothing more.   The paramount power of the city took out of the mortgage the right of way for the street, and the sale had no more effect upon it than if it had never been embraced in the mortgage.   There is nothing in the case to show that there was any mistake made by the bidder at the sale as to the land sold or intended to be sold, and even if there was it could avail nothing in this action. But he took part in the proceedings under which the easement was taken and, therefore, knew that his bid was for what remained only.   There is no question of equities between the parties, but only the bare question whether the plaintiff's title to the award was divested by the foreclosure sale.   (2) That the award did not pass to the purchaser upon the foreclosure sale.   It is undoubtedly true that the award was subject in the hands of the owner to the equitable lien of the mortgage to the extent of any deficiency which arose after the sale of the remaining land.   The holder of the mortgage in case of such deficiency could enforce that lien by equitable proceedings, though the legal title was in the mortgagor.   But there is no such question in this case, since it is undisputed that upon the sale the property remaining, after the street had been laid out, sold for not only enough to pay the mortgage, but all subsequent liens.   There is no question here with respect to the

right of a mortgagee to reach a judgment or award representing an injury to the lands covered by his mortgage and which impaired its security. The mortgage has been paid and satisfied, and the simple question is whether the referee's deed upon the foreclosure sale vested the purchaser with the title to the award.

The cases which hold that the mortgagee may reach the award in equity to satisfy any deficiency in the mortgage debt, after sale of the remaining land, have no application to a case where there is no deficiency. The only question we have to deal with here is whether an award when made attaches to the land and becomes so appurtenant to it that it will pass upon a conveyance by the owner or by a referee under a power of sale contained in the mortgage. This question should not be confused with the equitable right of the mortgagee to pursue the award in equity for the purpose of satisfying any deficiency in his debt arising upon the sale. (*Gates* v. *De La Mare*, 142 N. Y. 307; *Bank of Auburn* v. *Roberts*, 44 N. Y. 192; *Utter* v. *Richmond*, 112 N. Y. 610.) There can be no question with respect to this right, but that does not prove that the plaintiff was divested of his right of action upon the award by the referee's sale of the land, or that such a sale passes title to the award with the land.

It is quite clear, I think, that it will not. The equitable lien of the mortgage upon an award for the taking of land is inconsistent with such a principle. If the award passes by the sale to the purchaser it must follow that all equitable claim upon it by the mortgagee must cease, since the purchaser and the mortgagee could not have the award at the same time.

It is manifest, therefore, that the defendant cannot defeat this action upon the ground that the plaintiff was divested by the sale under the foreclosure judgment of his right of action upon the award. On the contrary, the plaintiff has as good a title to the award now as he had before the sale was made.

This case seems to have been decided in the court below, not upon any distinct ground that the plaintiff was not the owner of the award, but on the ground that, under certain

peculiar provisions of the city charter, an action was not the proper remedy.

It was said in *Donnelly* v. *City of Brooklyn* (*supra*) that the liability of a municipal corporation to pay for property taken under the right of eminent domain, for public use, is a common-law liability, and that a common-law action was the suitable and appropriate remedy for the enforcement of such liability. The same doctrine was asserted in the Supreme Court of the United States in *Kohl* v. *U. S.* (91 U. S. 367) and in *Supervisors of Erie* v. *City of Buffalo* (63 Hun, 565).

The right of the owner of land to whom an award has been made as compensation for the taking of his property for public use, under the right of eminent domain, to maintain an action for the recovery of such compensation, has been so often decided by this court that it is useless to cite authorities in support of it. The right of the legislature to abridge that remedy, and to turn the owner over to some other proceeding, was discussed by Judge Andrews in the case of *Sage* v. *City of Brooklyn* (*supra*), in the following language: "It is so axiomatic, that it is laid up as one of the principles of government, that a provision for compensation is an indispensable attendant upon the due and constitutional exercise of the power of depriving an individual of his property under the right of eminent domain. (*Gardner* v. *Vil. of Newburgh*, 2 Johns. Ch. 168.) The courts in construing the constitutional guaranty, have departed from what may seem its plain and natural meaning, and have held that the payment for property taken *in invitum* for public use, need not be concurrent with the taking, but that it is sufficient if the law authorizing the taking, also provides a sure, sufficient and convenient remedy by which the owner can subsequently coerce payment by legal proceedings. If such provision is not made, then, as was said by Nelson, Ch. J., ' the law making the appropriation is no better than blank paper.' (*People ex rel. Utley* v. *Hayden*, 6 Hill, 359.) It is, I think, a plain proposition, that a law authorizing the taking of a man's land, and remitting him for his sole

remedy for compensation to a fund to be obtained by taxation of certain specified lands in a limited district, according to benefits, is not a sure and adequate provision, dependent upon no 'hazard, casualty or contingency whatever,' such as law and justice require to meet the constitutional requirement. The pledge of the faith and credit of the state, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law. But a remedy for compensation, contingent upon the realization of a fund from taxation for benefits within a limited assessment district, does not meet the constitutional requirement."

According to this doctrine, which is undoubtedly sound, it was necessary in order to meet the constitutional requirement of compensation that the plaintiff should have the faith and credit of the city of Binghamton pledged for the payment of the property taken for its use. It was only because the city became responsible to the plaintiff for the award that the requirements of the Constitution were satisfied.

But it is said that the city has been discharged from this obligation without payment to the plaintiff of the award, and that he is turned over to pursue his remedy against an individual, or a public officer with whom the fund has been deposited.

The decision of the court below proceeded upon the ground that the constitutional obligation of the defendant to make compensation to the plaintiff for the land taken has been discharged by the following provision of its charter : "Title VII, § 10. Immediately after the final determination of all proceedings in which any award shall have been made, the common council shall cause to be paid or tendered to the respective owners the amount awarded to each respectively; in case any such owner shall refuse the same, or be unknown or a non-resident of the city, or for any reason be incapacitated from receiving

the amount, or the right thereto be disputed or doubtful, the common council may make payment of such amount to the office of the clerk of the county of Broome, as clerk of the Supreme Court, accompanied with a statement of facts and circumstances in each case, and a transcript of so much of the report of the commissioners as relates to the ascertainment of the amounts so paid in; and the said clerk shall make a report to the Supreme Court at its first term, Special or General, held thereafter in the county, of the amount thus deposited, accompanied with the statement and transcript as aforesaid; and the Supreme Court shall have authority, and it shall be its duty at such term of the court to order the investment of such money or the payment over on the ascertainment of the person entitled thereto. Upon such payment or tender, or payment to the clerk being fully made, the land may be taken by the city, pursuant to the resolution of the common council, declaring their determination to make such improvement, and the said street or other improvement may then be opened, worked and used."

It appears that, subsequent to the commencement of this action, the defendant paid the amount of the award in question to the clerk of the county of Broome, and such payment, it is said, has discharged it from all obligation to the plaintiff whose land was taken.

It is but fair to say that the city has not set up any such defense, and has not asked to be released on any such ground. In its answer, it stands squarely upon the proposition that the award passed to the purchaser with the land, and that the plaintiff has no interest in it. The court below, without passing upon that point, placed the decision on another ground which the defendant had not pleaded at all. The plaintiff could not avail itself of an event which transpired subsequent to the commencement of the action, such as payment, tender or deposit in court, without setting up the defense by supplemental answer under the provisions of the Code. (Code, § 544; *Hall* v. *Olney*, 65 Barb. 29.)

As before suggested, there is nothing in this record to show

that, since the commencement of this action, any one has made any claim to the award but the plaintiff. Mr. Downs, the purchaser, certainly has made no such claim. His grantee, the opera house company, makes no such claim, and is clearly in no position to make it, since it elected to bring ejectment for the land. The position which it has taken is clearly inconsistent with any such claim, and when a party elects to take one of two inconsistent remedies, it is bound by such election. The fact that the defendant has not invoked the protection of this statute by any pleading, and that there is no litigant upon this record or anywhere in sight seeking the money represented by the award, would be a sufficient answer to the point upon which the plaintiff was defeated below, quite apart from the fact that the defendant has not complied with the statute by filing the statement which it expressly requires.

But even if the defendant had in every respect complied with this statute before the commencement of the action, and had then pleaded it as a defense, it would constitute no bar to this action. The city cannot discharge itself from the constitutional obligation to make compensation to the owner for the land taken by paying the fund over to an individual, or a public officer, leaving the owner to pursue it in the hands of parties who may or may not be responsible. The legislature cannot take away the remedy against the city, upon whose faith and credit alone compensation was made secure and certain to the citizen whose property was taken, and leave him to pursue the clerk of the court or some other officer. Of course, if the legislature can relieve the city from its constitutional obligation upon deposit of the fund with the clerk of a court, it can do it upon deposit in a bank or with its own treasurer, or a county treasurer. Every statute should be construed as within the constitutional power of the lawmakers, and a meaning should not be imputed to it that would render it void or doubtful unless expressed in the clearest language.

The legislature has not attempted in this statute to abrogate or change any remedy for the recovery of the award that the owner had before. We have seen that the usual and ordinary

remedy of the owner, both at common law and under the various statutes, was an action for the recovery of money against the party whose duty it was to make the compensation. There is not a word in this statute which, in terms or by any fair implication, prohibits the plaintiff from pursuing the usual remedy by action against the city or discharges the city from its obligation to respond to the plaintiff in such an action.    It permits but does not require the city, under certain circumstances, to place the fund in the hands of an officer for investment.    The city is under no obligation to part with the money, but may retain it in its own custody.    The permission is given in order to subserve its own convenience and not to discharge it from its constitutional obligations.    It may place the money wherever it thinks proper, either in a bank or with its own treasurer, or the county clerk; but whatever it does with it, the constitutional obligation to pay the owner of the land remains.    The plaintiff's right of action against the city could not be discharged in this way at its own election, and there was no intention to discharge it.    No procedure whatever was provided by the statute or indicated in the charter to enable the owner to reach the fund.    To say that the ordinary remedy of the owner was abrogated and that he was left to experiment with this statute in order to get the price of his land would be a most dangerous and extraordinary construction of the law.    The statute does not profess to give any remedy at all, either by action, motion or mandamus, and, even if it did, it should be regarded under the plainest principles as cumulative and not exclusive, since it has often been decided that when the common law gives a remedy and another remedy is provided by statute the latter is cumulative unless made exclusive by the statute itself.    (*Wetmore* v. *Tracy*, 14 Wend. 250; *Candee* v. *Hayward*, 37 N. Y. 653.)

It would be contrary to justice and to every principle of law for the protection of property rights, if a city could take private property, go into possession and use it for nearly ten months, and then, when sued by the owner to recover the

compensation awarded, deposit the money with the county clerk and defeat the action on the ground that it had, in this manner, become discharged from its constitutional obligation to make compensation.

With respect to the point that the plaintiffs have pursued the wrong remedy, it may be asserted upon principles of justice and as the result of all the authorities:

1. That the property owner must always be left a safe and adequate remedy to coerce payment for his property against the party bound to pay for it, otherwise the Constitution is not complied with.

2. That he cannot be deprived of the faith and credit of the city, or its legal liability to respond to him for the value of the property on any pretense whatever, and so the city continues liable till the award is paid.

3. The common-law action of debt is the usual and most appropriate remedy for the property owner, in which all questions touching his right to the award may be tried according to the usual and established rules of procedure, and in which he may have a jury trial when the issues are of such a nature as to permit that mode of trial.

4. The power of the legislature to deprive the property owner of the right to sue at law upon the award, is at least doubtful, and I have not been able to find any case in which this court has sanctioned such a power, but, on the contrary, the principles that underlie the exercise of the power of eminent domain are clearly against it.

5. But the legislature has not attempted, in this case, to exercise any such power. It has not prescribed any other remedy, and has not in words, or by implication, excluded the remedy by action or attempted to discharge the city from liability.

6. The city was not bound, under any circumstances, to part with the money, except to the owner of the award, and it cannot be assumed that the legislature intended to leave it in the power of the city to discharge itself from the common-law

liability by action in such cases at its own election, and thus deprive the property owner of the safe, convenient and adequate remedy for coercing payment which the Constitution required.

7. Special statutory remedies to the property owner for enforcing the award are for his benefit, and are simply cumulative. The award is a judgment within the meaning of the Statute of Limitations, and the action is not barred till after the lapse of twenty years, the same as other judgments. (*Donnelly* v. *City of Brooklyn, supra.*)

The time when the award vested in the property owner in this case, and the land vested in the city, was not decided in the court below, so far as appears from the opinion. Since this question has some bearing on some of the propositions asserted in this opinion, it may be useful to notice it.

The award was made and filed on the 27th day of October, 1891. Either party had ten days to appeal from it, but no appeal was made. At the end of the ten days it, therefore, became absolute and stood confirmed. The proceedings were then ended. Neither party could go any farther, and the rights of each became fixed. Final judgment determining the rights of both parties was then entered by operation of law. Neither could undo what had been done. The city could not discontinue and the owner could not reclaim his land or question the award. The rights of all parties then became vested. (*People ex rel. G. L. Co.* v. *Common Council of Syracuse,* 78 N. Y. 56.)

It is true that the charter does not, in terms, fix the time when the title to the land shall vest in the city, but it is clearly apparent from the general provisions. By section 9 of title 7 of the charter, power is conferred upon the city, after the award has been made and before making any assessment to pay the award for the land taken, to sell any building upon the land at auction upon public notice in case the owner fails to elect within six days after notice to remove it. The power to sell and give title to the buildings on the land in a city, which frequently constitutes the principal value of the thing taken,

plainly assumes that the title has passed to the party empowered to make the sale. The city cannot give any title to the buildings until it has itself acquired the title. The power thus conferred to sell the very property taken is equivalent to an express provision declaring that the title vests in the city when the award becomes absolute by the failure of both parties to appeal within the time prescribed by the statute. So that when the proceedings terminated in an award from which no appeal was taken, the right of action on the award vested in the property owner and the title to the easement for a street in the city. When the land was sold under the foreclosure judgment three months afterward, this easement had been severed from the mortgage lien as completely as if it had never been included therein. It could not have been sold and was not sold by the referee. The purchaser's bid was necessarily upon the land remaining, and that only was conveyed. The mortgagee realized sufficient to pay the mortgage in full, and thus the equitable lien upon the award in his favor was discharged. Mr. Downs, the purchaser at the sale, had participated in the proceedings to take the easement for a street as counsel, as appears from the record. He knew, therefore, that he could not buy what the city had taken, and that his bid was for what was left. There is no claim made upon the record that the property purchased, exclusive of the easement for a street, was not worth the amount of the bid. Nor is there any claim that he supposed, as matter of fact, that he was buying the award. Under these circumstances, it is quite difficult to perceive how the purchaser could get any more title to the award, which was a mere right of action, personal to the owner of the equity of redemption, than he could to the personal bond of the mortgagor, which was held for the same purpose, namely, of meeting a deficiency on a sale of the land in the debt secured by the mortgage; but since there was no deficiency the claim of the mortgagee upon the award, as well as his right of action on the bond, was discharged.

The learned counsel for the opera house company, which has an ejectment action pending against the defendant for the land,

was permitted to file a brief in this case and was heard at the argument. He and the learned counsel for the defendant differ widely with respect to some features of the case, but they are in perfect accord upon at least one point, and that is that the city has acquired no title to the land by reason of certain defects in the statutory proceedings under the charter. This position is of course essential to success in the suit by the opera house company for the land; but why the city itself should urge it as a defense to this action is not so clear. We can decide nothing in this case with respect to the merits of the controversy between the defendant and the company. But so far as that question is involved in this case, we think it clear that after the city has instituted and completed proceedings for the condemnation of the land, procured an award to be made to the owner, collected the money to pay the award by assessment upon the property benefited, has gone into possession of the land with the consent of the owner, and is using it now as a street, and with the money in its possession, or under its control, contributed specially by the taxpayers for the payment of this award, it cannot now be heard to question the validity of its own proceedings to defeat an action by one of the property owners upon the award. It is not open to the city, under the circumstances of this case, to make such an objection, or to raise such a question. The courts below have held that the proceedings on the part of the city to take the land were regular and valid in all respects. That part of the decision was in favor of the city since it affirmed its right to the land as against any party in this action. It has accepted the benefits of the judgment in that respect, and has made no appeal from any part of it. On the contrary, it is now asking this court to affirm the whole judgment. If it ever intended to raise any question as to the validity of its own proceedings it should at least have appealed from the judgment so far as it adjudged the taking of the land to have been in accordance with the statute, and with full jurisdiction on the part of the city authorities.

Moreover, no one can question the proceeding in this action

for mere error or irregularity. The award being in the nature of a judgment is not open to any collateral attack. It can be assailed only as void for want of jurisdiction, and there is no finding of fact or proof in the record upon which to base a jurisdictional defect. On the contrary, the findings are to the effect that the proceedings were regular and valid. The parties had the right of appeal to the court for the correction of any legal error or irregularity. It is found that after the termination of the proceedings, the city, with the consent of the owner, entered upon the land and is now using it for a street. Therefore, both parties have acquiesced in the validity of the proceedings, and neither can question them in this action, whatever may be the right of third parties.

It will be seen that Downs, who was the purchaser at the mortgage sale, has made no claim to this award. His grantee, the opera house company, makes no claim and can make none. It has elected to assail the whole proceeding as void for want of jurisdiction, and is bound by that election. There was never any ground for a claim on its part to the award, unless it be true, as matter of law, that it passes from one purchaser to another, down through the chain of title like a covenant of quiet enjoyment in a deed.

Suppose the defendant defeats this plaintiff in the present action, as it has thus far, and defeats the opera house company in its action of ejectment, as it has thus far, what will it do with the money collected to pay the award? The opera house company cannot change position and claim it after being defeated in the pursuit of another and inconsistent remedy, and the plaintiff's right to claim it will have been settled adversely to him.

It is proper before concluding the discussion to notice two cases cited by the defendant in support of its position. *Gates* v. *De La Mare* (142 N. Y. 307) simply decides what has so often been asserted in this opinion, that a mortgagee has an equitable claim upon the award, to the extent necessary for his protection. In that case the sale was made before the award was confirmed or the land taken, and the title to the

whole premises vested in the purchaser at the sale, so that, when the award was made he was the owner of the land. Moreover, it did not appear in that case, as it does here, that the mortgage had been satisfied by the sale of the remaining land. The doctrine laid down in the case of *Home Insurance Company* v. *Smith* (*supra*), though stated in the opinion, was not questioned, but the clear distinction between the two cases pointed out.

The other case is *Delap* v. *City of Brooklyn* (144 N. Y. 265). It belongs to a class of cases that this court has always regarded as *sui generis*. The land had been taken by force of a statute, but the city, for eighteen years, never entered upon it or claimed it. In the meantime the land had been bought and sold, and passed from one owner to another under deeds containing covenants of warranty, precisely as if the statute had never been passed. When, after the lapse of so many years, the city was called upon to pay awards, the question arose as to who was the owner. The city admitted it was liable to pay some one, and no one claimed the award except the plaintiff in the case, who had a deed of the whole land, with full covenants, when the action was brought. We held, under the circumstances of the case and the language of the several deeds under which the plaintiff derived title, that it was the intention of the grantors to assign the award, and that the plaintiff took it as assignee.

The case also decides that, under the same circumstances, a purchaser at a mortgage sale, before any award was made, took the award when made, since he was the owner of the land at that time, and no one else claimed the money.

These cases afford no authority for the contention that the plaintiff in this case was divested of the title to an award made to him, before any judgment of foreclosure, by a sale upon the judgment, three months after the award had vested in the plaintiff.

It seems to me to be for the best interests of the city to be relieved from its present position. The case should be remanded for a new trial, and the city can then obtain leave

to bring the fund into court and require all parties who claim it to interplead and contest the question of title between themselves.

The judgment should be reversed and a new trial granted, costs to abide the event.

BARTLETT, J., reads for affirmance, and all concur except MARTIN, J., not sitting, and O'BRIEN, J., who reads for reversal.

Judgment affirmed.